Thomas J. O'Keefe, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

152

Argued February 7, 1975, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*John D. McBride,* with him *Panner, Holland* and *Autenreith,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, March 21, 1975:

This is an appeal by Thomas J. O'Keefe (O'Keefe) from an order of the Unemployment Compensation Board of Review (Board), dated April 9, 1974. The Board's order reversed an order of an unemployement compensa-

tion referee dated January 29, 1974, which had awarded benefits to O'Keefe.

O'Keefe was employed as an "unpacker" at a branch of Kaufmann's, a large Pittsburgh-based department store. He had held this job from October 1, 1968 until November 20, 1973, the date of his discharge. O'Keefe frankly admits that for several months prior to his discharge he had been in the habit of removing small, stale pastry items from a hamper located near his work station. He ate these items as a supplement to his lunch. These pastries had been offered for sale in the branch store, reduced in price after one day, and thereafter stored in the hamper prior to being shipped to Pittsburgh for some incidental use.[1] It is uncontroverted in the record that O'Keefe only took stale pastries which had been removed from the sales area.

On the morning of November 20, 1973, O'Keefe took two pastries out of the hamper. Afterwards, at approximately 11:00 A.M., O'Keefe's immediate supervisor informed him that he was not permitted to take the pastries and that he should not eat any more of them. At approximately 1:30 P.M. on that same date O'Keefe was discharged for eating the stale pastries.

The Board denied benefits on the basis of section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), which provides, in relevant part, that an employe shall be ineligible for compensation for any week:

"(e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ."

---

1. The record indicates that these stale pasteries were "ground up" for use in producing new baked goods. The Board's brief, however, states that the pastries were used as animal feed. Unchallenged testimony in the record reveals that neither O'Keefe nor his immediate supervisor know of any further use for the pastry items.

The burden of proving willful misconduct is on the employer. *MacFarlane v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 550, 554, 317 A. 2d 324, 326 (1974) and *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 98, 309 A. 2d 165, 169 (1973). Whether the facts, as found below, constitute willful misconduct is a question of law. *Longacre, Inc. v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 176, 179, 316 A. 2d 110, 111, (1974). Our power to review for errors of law is clear, as is our duty to determine whether all necessary findings are supported by substantial evidence. *Stalc v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 13 Pa. Commonwealth Ct. 131 134, 318 A. 2d 398, 400 (1974).

We have interpreted section 402 (e) of the Law as requiring (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully expect from his employe; or, (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employe's duties and obligations. *Kentucky Fried Chicken, supra.* This definition indicates that before the actions of an employe can constitute willful misconduct, the employe must display a serious disregard of his responsibilities to his employer, in a manner that is in some real sense detrimental to his employer's interests. The question is primarily a matter of degree, and the inquiry must be framed in terms of whether the employe's acts rise to the level of willful misconduct. *Loder v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 484, 296 A. 2d 297 (1972).

O'Keefe's immediate supervisor testified that he had observed O'Keefe and other employes[2] taking the stale baked goods on many occasions, but that he had never warned any employe that such action was a violation of company policy. The supervisor explained this inaction by stating that *he* did not realize that there was anything wrong with taking the stale pastries until the day of O'Keefe's discharge, when *his* superior informed him of the policy. A reading of the record reveals that O'Keefe made no attempt to conceal his actions, since both he, the other employes, and their immediate supervisor believed that the stale pastries were valueless waste material.

Comparing this factual situation with the definition of willful misconduct noted above, we must conclude that O'Keefe's actions do not rise to the level of willful misconduct.

It is difficult to see how O'Keefe's conduct can amount to a *willful* disregard of his employer's interest, a *deliberate* violation of rules, or negligence which manifests wrongful *intent* or evil *design,* when O'Keefe's supervisor observed the suspect action over a period of time, said nothing, and, in fact, did not know himself that any company policy was being violated.

The only remaining basis for concluding that O'Keefe's actions constituted willful misconduct would require a finding that eating the stale pastries amounted to "the disregard of standards of behavior which an employer can rightfully expect from his employe." *Kentucky Fried Chicken, supra.* Once again we point out that willful misconduct is a matter of degree, and, while we do not condone theft by an employe, we simply cannot agree with the Board that this case shows any improper motive on the part of O'Keefe. In the peculiar circumstances of this

---

2. The record does not indicate that any other employes were discharged for eating stale pastries.

case, we can find no indication of any wrongful conduct on O'Keefe's part. Indeed, it is difficult for us to see how O'Keefe can be said to have disregarded a "standard of behavior" when the record shows, without contradiction, that none of the other employes, or the immediate representative of management, had the slightest idea that anything was wrong with eating a piece of stale, apparently unsalable, pastry.

We note that O'Keefe, at the instigation of Kaufmann's security personnel, signed a waiver of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), and a statement in which he "admitted" that he knew eating the pastries was wrong. This statement was signed by O'Keefe but was written in the handwriting of another person. It included an offer to make restitution in the amount of $50 (to cover all of the pastries consumed by O'Keefe over a period of several months), and, in fact, O'Keefe did pay Kaufmann's $50. From this, the Board found that O'Keefe had been "stealing baked goods" from his employer. The entire balance of the record leaves us with no doubt that O'Keefe was not "stealing" as we understand the meaning of that term, and the statement containing the "admission" (which is the only evidence indicating O'Keefe knew his actions were disapproved of by his employer) does not constitute the substantial evidence necessary to support the finding of the Board.

O'Keefe testified that he signed the statement at the request of security personnel because he was upset over the incident and feared a criminal prosecution at Kaufmann's instigation. The procedure of this large department store security force used in this case appears to be similar to the procedure followed in shoplifting cases. The portion of the signed statement which purports to acknowledge that eating the pastries was "wrong" is patently incredible in light of the fact that the management's own representative did not see anything wrong with the practice and had, in fact, knowingly permitted

it to continue. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support the finding of the Board. *Tritex Sportswear, Inc. v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 335, 315 A. 2d 322 (1974). Considering the circumstances under which the "admission" was made, the nature of the document itself, and the fact that it is the only evidence indicating that O'Keefe was aware of any relevant company policy, we cannot conclude that, standing alone, it provides adequate support for the Board's finding.

The Board cites *Kostik v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 32, 315 A: 2d 308 (1974) as authority for the proposition that even one isolated instance of theft is sufficient to constitute willful misconduct. We do not disagree with this view of *Kostik*, but we note that in *Kostik*, and in contrast to the instant case, there was considerable evidence in the record to support the necessary finding of fact concerning the theft. In *Kostik* the employe had also signed a written "admission" (written in her own hand), but there was independent corroborating testimony to indicate that a theft had been attempted. Also, in *Kostik* the employe was allegedly engaged in tampering with price stickers on pieces of meat, an activity which the employe could not reasonably deny was an intentional violation of her employer's trust. The consumption of stale pastry items, in the circumstances of the instant case, presents a totally different situation, in which an innocent misapprehension of company policy (or "non-policy") is a clear possibility.

Our holdings in this case are, of course, limited to the facts we have before us, and we do not imply that we approve of theft by employes. Our careful review of the record, however, leads us to conclude that O'Keefe's conduct simply does not rise to the level required to mandate a denial of benefits. Accordingly, we

### ORDER

AND NOW, this 21st day of March, 1975, it is hereby ordered that the order of the Unemployment Compensation Board of Review, dated April 9, 1974, denying unemployment compensation benefits to Thomas J. O'Keefe, is reversed.