Aloysius G. Glasser, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued May 10, 1979, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*John Stember*, for petitioner.

*Charles G. Hasson*, Assistant Attorney General, with him *Edward G. Biester, Jr.*, Acting Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., August 10, 1979:

Aloysius Glasser's compensation claim was denied by the Unemployment Compensation Board of Review (UCBR) which found that his failure to report for a medical examination scheduled by his employer, Westinghouse Electric Corporation, was willful misconduct, a disqualification under Section 402(e) of the Unemployment Compensation Law (Act),[1] 43 P.S. §802(e).

Glasser appeals to us, arguing that Westinghouse was notified that he would be unable to attend the examination and hence his failure to personally ap-

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

prise Westinghouse did not constitute willful misconduct.

We agree with Glasser and reverse UCBR.

Glasser was disabled in a work-related incident at Westinghouse in March, 1976, and was retained on its "active rolls" although he was unable to work.[2]   On January 21, 1977, and February 1, 1977, Westinghouse sent letters to Glasser's home requesting that he report to its medical department for a physical examination.   He was advised that failure to report would result in his termination.   Glasser was incarcerated from December 10, 1976, through February 14, 1977, and while he was so occupied the letters were received by his wife.   Glasser was made aware of the letters' content but he did not personally reply to either letter.

It was stipulated that, when the second letter arrived, Glasser's wife notified Westinghouse by telephone that her husband would be unable to attend the medical examination as scheduled, offering his back condition as the excuse.   She did not inform Westinghouse of her husband's imprisonment.[3]

---

[2] Glasser's disability benefits were exhausted in September 1977.

[3] In response to questioning by the referee, the employer's representative made the following stipulation:

QR   Do you have any record of Dr. Gates, the medical examiner was contacted by Mrs. Glasser regarding the receipt of this second letter?

AE   Mr. Nickl [Employer's representative] would like to make a statement.

I'll stipulate that Mrs. Glasser did call 2-3-77 Dr. (inaudible) Gates. I also (inaudible) and he said the conversation between him and Mrs. Glasser about Mr. Glasser, stated that uh, Al couldn't come into work because he was bedridden and anybody that touched his back he would be crippled for life. And he couldn't walk and that's the reason he didn't come into medical. I had no notification at that time that Mr. Glassere [sic] was in fact incarcerated.

The employer must shoulder the burden of proving willful misconduct. It is the function of this Court in reviewing the record to determine whether the employer has shown the requisite "willful misconduct" cited in Section 402(e).

Case law instructs us that an employee's failure to comply with an employer's reasonable rules and regulations may rise to the level of willful misconduct. However, we must consider and evaluate the reasonableness of the employer's request in light of all the attendant circumstances. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

Apparently, UCBR's denial is premised on Glasser's failure to personally notify Westinghouse of his inability to attend the examination. The stipulation disposes of the factual issue of whether *any* notice was given Westinghouse. The sufficiency of that notice is the pivotal inquiry and a question of law for us to decide. *Welded Tube Co. of America v. Unemployment Compensation Board of Review*, 43 Pa. Commonwealth Ct. 231, 401 A.2d 1383 (1979).

The employer's representative testified that his company had no established personnel policy requiring an employee to give personal notification of his anticipated absences. In *Unemployment Compensation Board of Review v. Blouse*, 23 Pa. Commonwealth Ct. 66, 350 A.2d 220 (1976), we held that, absent a clear definable reporting procedure, notice given to an employer through a third person is legally adequate. Therefore, we must conclude that UCBR erred in basing its denial on Glasser's failure to personally notify Westinghouse although he had access to mail and telephone service in prison.

The record indicates that Glasser's termination was not prompted solely by his failure to notify Westinghouse personally but also by its disbelief in the explanation Glasser's wife proffered:

Q C/L. You are saying that you felt it was insufficient because Mr. Glasser personally did not contact your office?

A. E. Plus I didn't believe his wife's statement that Dr. Lang can't touch his back. That he would be crippled for life. And Mr., Dr. Lang cannot verify that statement that Mrs. Glasser made. . . .

Q C/L. Now that you found out that Mr. Glasser was in fact encarcerated during the time he was requested to report for the medical exam and was unable to report to the exam as requested, why have you not reinstated him?

A. E. Because he didn't repond [sic] to the the request.

Q. C/L. So in otherwords [sic] it was insufficient for his wife to contact Westinghouse regarding his inability to appear on February 4?

A. E. I never said it was sufficient.[4]

Indisputably, an employee's deliberate lie or attempt to mislead his employer constitutes willful misconduct. *Blessings v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 345, 383 A.2d 580 (1978); *Mileski v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 334, 379 A.2d 643 (1977); *Miokavic Unemployment Compensation Case*, 195 Pa. Superior Ct. 203, 171 A. 2d 799 (1961).

Because the record is devoid of any evidence suggesting that Glasser's wife was instructed by him to withhold the actual reason for Glasser's absence at the appointed time, we will not attribute to Glasser an intentional or deliberate attempt to deceive his em-

---

[4] Upon reading the transcript, it is clear that "QC/L" is a reference to Glasser's attorney and "AE" refers to the employer's representative.

ployer that would disqualify him under Section 402 (e).

Accordingly, we

ORDER

AND Now, this 10th day of August, 1979, the order of the Unemployment Compensation Board of Review in this case dated January 19, 1978, is hereby reversed and the record remanded for the calculation of benefits.