Bernard J. Mancini, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 7, 1980, before Judges BLATT, MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Sanford S. Finder*, for appellant.

*John T. Kupchinsky*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General for appellee.

OPINION BY JUDGE MACPHAIL, March 28, 1980:

Bernard J. Mancini (Claimant) has filed this appeal from an Unemployment Compensation Board of Review (Board) order affirming the referee's decision which found Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e)[1] and liable under Section 404 of the Law, 43 P.S. §804 (b) for a non-fault overpayment. We reverse.

Claimant was employed at Jones & Laughlin Steel Corporation (Employer) as a draftsman-chainman on March 31, 1977 when he suffered a compound fracture to his left index finger during the course of his employment. The Claimant received workmen's compensation benefits due to this injury. In August of 1977, Dr. Halin, who had testified for the Employer during the workmen's compensation proceedings, cleared the Claimant to return to work. Thereupon, the Employer

---

[1] Section 402(e) of the Law provides as follows:

An employee shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work; irrespective of whether or not such work is 'employment' as defined in this act.

filed a Termination Petition and a hearing was held. The referee denied the petition, but suspended benefits and ordered Claimant to return to work on a rehabilitative basis and to determine the effect of the injury on the Claimant's earning power and earnings. That order was dated February 21, 1978 and Claimant filed an appeal therefrom which apparently has not yet been resolved.

On March 14, 1978, the Employer directed Claimant to report for work on March 16, 1978. Claimant did so and was returned to his previous position, which required the use of his left hand. On March 17, 1978, Claimant experienced pain and stiffness in his injured finger and went to see his family doctor, who advised him to stop working. On Monday, March 20, 1978, Claimant's wife reported him off work for March 20 and 21 due to the condition of his finger.

On March 22, 1978, Claimant reported for work. A medical certification had been prepared by his physician, Dr. Schor, to substantiate the absences of March 20 and 21. At the hearing before the referee, the Employer's representative acknowledged that this certification had been received, but Employer refused to accept it as justification for Claimant's absences. Employer informed Claimant that a final warning would be issued that continued absences would result in termination. This written warning did issue on March 23, 1978.[2]

Claimant reported off on March 23, 1978 and was told by his supervisor to report to Employer's clinic

---

[2] The letter in its entirety read as follows:

This is to advise you that the reason for your absences on Monday, March 20, 1978, and Tuesday, March 21, 1978, for which your wife reported you off, has been reviewed. I do not believe that these absences are justified. Further, in view of your previous failures to report for work, I am issuing you this last, final warning regarding unjustified absences from work.

to have Dr. Halin examine the injured finger. Claimant testified that he believed the examination was in connection with his workmen's compensation appeal and, after consulting with his attorney, he informed the Employer that he refused to see Dr. Halin on advice of counsel.

On March 24, 1978, Claimant received a letter from Employer notifying him that he had been suspended for five days with "intent to discharge *for failure to report for work.*" (Emphasis added.) After learning that Dr. Halin was the company physician and that the examination was with respect to his absences from work and not his compensation appeal, Claimant made an appointment with Dr. Halin on March 24 to see him on March 30. On March 29, Claimant was discharged.

Although the referee and the Board found that Claimant was discharged for excessive absences *and* his refusal to be examined by a company doctor, there is no substantial evidence in the record of this case to support a finding that Claimant was discharged for refusing to be examined by the company doctor. Form UC-45 admitted as an exhibit at the referee's hearing and signed by the Employer's representative states that the reason for discharge was "repeated failures to report as scheduled following numerous medical clearances." The notes of a telephone conversation between the Board's representative and the Employer's representative, also admitted as an exhibit at the referee's hearing, states "missed on 3-24-78 so we decided to get rid of him." Finally, as we have previously noted, the Employer's suspension letter of March 24 informed Claimant that he would be discharged for failure to report for work. Although reference is made in the testimony of the Employer's representative concerning Claimant's refusal to be examined by the company doctor, there is nothing in the

testimony that would indicate that Claimant was discharged for any reason other than his absences. Accordingly, even were we to find that the refusal to see Dr. Halin constituted willful misconduct, it would be irrelevant because there is no evidence that Claimant was discharged for that behavior. *Century Apartments, Inc. v. Unemployment Compensation Board of Review*, 30 Pa. Commonwealth Ct. 485, 487, 373 A.2d 1191, 1192 (1977).

Thus, the issue in the present appeal is reduced to the question of whether Claimant's absences constitute willful misconduct. Willful misconduct has been defined as:

> wanton or wilful disregard of the employer's interest; a deliberate violation of rules, a disregard of behavior standards which an employer can reasonably expect or negligence such as to manifest culpability, wrongful intent or evil design or show an intentional and substantial disregard of the employer's interests or the employe's duties.

*Nyzio v. Lee Tire & Rubber Co.*, 26 Pa. Commonwealth Ct. 600, 602, 364 A.2d 981, 982 (1976).

Absences due to illness do not constitute willful misconduct, but if the absences are excessive and the employee has received warnings and has failed to comply with the employer's rules as to notice, such absences may rise to the level of willful misconduct. *Unemployment Compensation Board of Review v. Blouse*, 23 Pa. Commonwealth Ct. 66, 350 A.2d 220 (1976).

In the instant case, the Employer did not complain of the notice given by Claimant, but maintained that Claimant could work because its physician had so stated. It is beyond dispute that it is for the finder of fact to determine the credibility and weight of the evidence. *Gardner v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 548, 372

A.2d 38 (1977). It is also true that whether the behavior for which an employee was discharged constitutes willful misconduct is a question of law and subject to review by this Court. *O'Keefe v. Unemployment Compensation Board of Review*, 18 Pa. Commonwealth Ct. 151, 333 A.2d 815 (1975).

In the instant case, the Board found the Employer's testimony to be credible; however, the record shows that there is no dispute as to the material facts. The Claimant did miss work and did so after he had been advised that he faced termination if he continued to do so. Nor is there any dispute that Claimant had suffered a personal injury and that his doctor had certified that Claimant was unable to work at any job requiring use of the left hand.

The resolution of the issue of willful misconduct depends upon the reasonableness of the Employer's expectation that Claimant continue to work with his injured hand. If the Claimant was indeed unable to work, the Employer's demands were clearly unreasonable and Claimant's refusal to comply would not be willful misconduct. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976); *Kindrew v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 9, 388 A.2d 801 (1978).

The Board held that Claimant had been found "fit to return to work" by the referee. The referee did not, however, find that the disability had terminated, but ordered Claimant to return to work as a rehabilitative measure and to determine what effect, if any, the injury would have on his earning power. It is obvious that when Claimant returned to work in March of 1978, there was no way at that time of knowing what the effect would be on the injured finger. Under these circumstances, we hold it was reasonable for Claimant to rely on his doctor's advice that the work

was aggravating the injury and that he should not continue.[3] Further, the Employer's reliance on the opinion of its doctor that the injury should improve if the finger were used is not reasonable in light of Claimant's physician's contrary certification. In effect, the Employer was demanding that Claimant risk permanent damage to his finger. Under these circumstances, we cannot hold as a matter of law that Claimant's refusal to work constituted willful misconduct. *Frumento, supra.*

Due to our resolution of the issue of willful misconduct, we need not reach the overpayment under Section 804(b).

ORDER

AND Now, this 28th day of March, 1980, the order of the Unemployment Compensation Board of Review, dated August 31, 1978, which denied benefits and directed recoupment of the overpayment is hereby reversed and the case is remanded to the Board for further proceedings consistent with this opinion.

President Judge BOWMAN did not participate in the decision in this case.

---

[3] The record discloses that when Dr. Halin examined Claimant on March 30, he was concerned enough about the injured finger to refer Claimant to a specialist.