Edward C. Lee, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Michael P. Shay, Sigmon & Ross,* P.C., for petitioner.

*Steven Marcuse,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, March 13, 1981:

Edward C. Lee (claimant) appeals here from an order of the Unemployment Compensation Board of Review (Board) which denied him benefits pursuant to Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).[1]

The claimant, who was nearing his 65th birthday, planned to retire on July 29, 1979 from his job as general manager of Daniels Cadillac (Daniels), a business located in Allentown, Pennsylvania, where he had been employed for twelve years. In March of 1979, however, Albert Eidam of Eidam Cadillac (Eidam), whose business was located in Kingston, Pennsylvania, and who knew of the claimant's plan, sought to hire him as a part-time assistant sales manager. The claimant accepted this offer of employment and, in response to Eidam's indication that his help was needed immediately, left his better-paying job with Daniels on May 3, 1979, two months earlier than planned, and joined Eidam two days later. Because the Daniels pension plan had been cancelled in 1977, from which the claimant received a cash settlement of $21,159 in consideration of the cancellation, Daniels had promised him "something extra" in lieu of pension benefits and, on June 1, 1979 (which was almost a month after his employment with Eidam had started), Daniels and the claimant agreed as follows:

---

[1]Section 402(e) provides:

An employee shall be ineligible for compensation for any week—

. . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

In appreciation for past loyalty, Daniels Cadillac, Inc., has agreed to retain the services of Mr. Lee in his retirement years as a part-time consultant. The only restriction is that Mr. Lee not engage in the buying or selling of automobiles within a fifty mile radius and to continue to uphold the good name of Daniels Cadillac, Inc., which he has labored for so hard in the past.

In consideration of the above, Daniels Cadillac, Inc., will pay Mr. Lee the sum of $174.00 per month for sixty (60) months.

On his next working day following the making of this agreement, the claimant has testified that he informed Eidam's general sales manager about the agreement and that he was told there was "no problem." He has further testified, however, that he was informed by Eidam's sales manager in mid-August of 1979 that he, among others, was going to have to be let go because "we just got to cut expenses." He also testified that, in the ensuing discussion, Albert Eidam told him that he was being let go because of a "conflict of interest." Subsequent to this meeting, he said, the secretary of Eidam informed him that a "conflict of interest" resulted from his having signed the agreement with Daniels. The record indicates that the others whose services were terminated when the claimant was discharged were let go in an effort to cut back on expenses, and the claimant argues that this was the real reason for his own dismissal. He testified that he actually had no consulting duties to perform with Daniels and that the agreement had been labeled as a consultant agreement by Daniels merely because "they couldn't legally list it as an addition to retirement." He argues, therefore, that there could not have been any conflict of interest.

The Office of Employment Security denied benefits but was reversed by the referee. He, in turn, was reversed by the Board which held that the claimant had been discharged for willful misconduct. This appeal followed.

In unemployment compensation cases our scope of review is limited to a determination of whether all necessary findings of the Board are supported by substantial evidence or an error of law has been committed. *Neff v. Unemployment Compensation Board of Review,* 47 Pa. Commonwealth Ct. 296, 407 A.2d 936 (1979). In conducting such an examination, the testimony must be examined in the light most favorable to the party in whose favor the Board has found, giving it the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Brooks v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 6, 388 A.2d 799 (1978). The burden of proving willful misconduct, of course, is upon the employer. *Glasser v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 29, 404 A.2d 768 (1979). And, while willful misconduct has not been statutorily defined, "its meaning has been judicially developed to encompass the wanton and willful disregard of an employer's interest, a deliberate violation of rules, a disregard of expected behavior standards, or negligence manifesting culpability, wrongful intent, evil design or intentional and substantial disregard of the employer's interests or the employee's duties and obligations." *Serban v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 147, 150, 370 A.2d 755, 756 (1977). In construing this standard, we have stated that, "before the actions of an employee can constitute willful misconduct, the employee must display a serious disregard of his responsibilities to his employer, in a manner that is in

some real sense detrimental to his employer's interests." *O'Keefe v. Unemployment Compensation Board of Review,* 18 Pa. Commonwealth Ct. 151, 154, 333 A.2d 815, 818 (1975). In determining if there has been a disregard of the standards of behavior which the employer has a right to expect of his employee, a finding of "intent to wrong the employer is not necessary and a conclusion of 'willful misconduct' may be based on a finding of conscious indifference to the duty owed the employer." *Homony v. Unemployment Compensation Board of Review,* 11 Pa. Commonwealth Ct. 142, 145, 312 A.2d 77, 78 (1973). It is well settled that a finding of willful misconduct is ultimately a question of law which this Court is capable of deciding and that the legal conclusion depends upon our review of the Board's findings of fact as to (1) whether or not the facts constitute willful misconduct and (2) whether or not the facts are supported by the evidence. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973).

The Board found here that "[t]he claimant's employment with Eidam was terminated because of a conflict of interests (sic) between his duties with Eidam and the agreement he had signed with his past employer," and said that:

> In limiting his automobile sales to an area beyond 50 miles *of Allentown,* the claimant was limiting his effectiveness to his employer. Further, the latter was in direct competition with claimant's prior employer. Therefore, the agreement is an act inimical to the *best* interests of his new employer. (Emphasis added.)

The Board's holding that what the claimant did here was "inimical to the best interests" of Eidam constitutes an erroneous application of the required

486

test for willful misconduct to the evidence. Willful misconduct is established only where the act complained of amounts to a *detrimental* disregard of the employer's interests, or is substantially inimical to those interests, *Miller v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 539, 405 A.2d 1034 (1979), *not* when it is inimical to the employer's *best* interests. In addition, the agreement here referred to activity "within 50 miles of Daniels Cadillac, Inc.," *not* to activity "within 50 miles of Allentown," yet there is no finding of fact as to the distance between the two places of business; for that matter, there is not even a finding as to the distance between the two cities.

We must remand this matter to the Board for a finding as to whether or not the Eidam place of business was located within fifty miles of the Daniels place of business and for a reconsideration of its ruling in the light of such finding and of this opinion.

ORDER

AND Now, this 13th day of March, 1981, we remand the above-captioned matter to the Unemployment Compensation Board of Review for findings and review in accordance with this opinion.