# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carnell A. Jefferson Jr.,           :
               Petitioner        :
                              :
       v.                       :
                              :
Unemployment Compensation Board  :
of Review,                       : No. 473 C.D. 2015
               Respondent    : Submitted: August 21, 2015

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                  HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI           FILED: September 10, 2015

Carnell A. Jefferson Jr. (Claimant) petitions *pro se* for review of an order of the Unemployment Compensation Board of Review (Board) finding him ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because his termination was due to willful misconduct. For the reasons that follow, we affirm.

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751–914. Section 402(e) provides, in pertinent part:

An employe shall be ineligible for compensation for any week—

* * *

**(Footnote continued on next page…)**

**I.**

The following facts are not in dispute. Since 2013, Claimant was employed as a full-time cook by Blue Ridge Senior Housing (Employer). Following his out-of-work injury on June 18, 2014, Claimant notified his supervisor that he would not report to work as scheduled but that he planned to return to work on June 23, 2014. However, on that date, Claimant called off again. Four days later, on June 27, 2014, Claimant provided Employer with a physician's disability certificate stating that he would be totally incapacitated until July 7, 2014, when he could return to work. Around the same time, Employer provided Claimant with paperwork to apply for leave pursuant to the Family and Medical Leave Act (FMLA),[2] which Claimant did not submit by the deadline established by Employer. After failing to report to work on July 7th and July 9th through July 11th, Employer discharged Claimant on July 15, 2014. Subsequently, Claimant provided another disability certificate in which his physician released him to work without restrictions as of September 17, 2014.

---

**(continued…)**

> (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act…

43 P.S. §802(e).

[2] *See* 29 U.S.C. §2616(a)(1).

Claimant filed a claim for benefits which the Unemployment Compensation Service Center denied, finding him ineligible under Sections 402(b)[3] and 401(d)(1)[4] of the Law with regard to the waiting week ending July 19, 2014, because: (1) Claimant voluntarily quit when he failed to timely provide Employer his FMLA documentation and, therefore, failed to show a necessitous and compelling reason for quitting; and (2) he failed to demonstrate that he was able to perform and available for suitable work since he was under a total work restriction.

Claimant appealed, contending that he did, in fact, submit his FMLA documentation and that he did not voluntary quit his employment. Rather, Claimant submitted that he was terminated after he advised Employer that he was capable of performing light-duty work as per his doctor's orders, and Employer informed him that it had no such jobs available.

---

[3] Section 402(b) further disqualifies a claimant from receiving benefits with regard to any week:

> In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature….

43 P.S. §802(b).

[4] Section 401(d)(1) of the Law provides, in part, that "[c]ompensation shall be payable to any employee who is or becomes unemployed and who… [i]s able to work and available for suitable work." 43 P.S. §801(d)(1).

Before a Referee,[5] Claimant testified that after he sustained non-work related rib and back injuries, he provided Employer with a physician's note dated June 27, 2014, stating that he was totally incapacitated from June 18th through July 7th. Claimant stated that he would have been able to return to light-duty work on July 7th, advised Employer of this fact, but Employer had no light-duty jobs available. Claimant further testified that he was not released without restrictions until September 17, 2014, and that he was never formally terminated by Employer.

With regard to the FMLA paperwork, Claimant recalled that Employer requested that he return the completed documentation by July 7, 2014, but that his doctor was unable to complete the forms until July 16th when the doctor's office faxed them to Employer. Because the submission was untimely, Employer neither accepted the forms nor approved the requested leave.

---

[5] Specifically, the Notice of Hearing stated:

**SPECIFIC ISSUES** to be considered in this appeal…

# 15 − Section 402(b) − Whether claimant's unemployment was due to voluntarily leaving work without cause of necessitous and compelling nature.

# 10 − Section 401(d)(1),(2) − Whether the claimant was able and available for suitable work.

OTHER ISSUES that may be considered…

# 17 − Section 402(e) − Whether claimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.

(Certified Record [C.R.], Notice of Hearing (9/10/2014) at 1.)

4

Claimant also presented the testimony of Denen Timms, for whom Claimant works as a home health aide. Ms. Timms verified that at the time of Claimant's injury, he continued to work for her, albeit, with reduced hours, and that his employment with her is ongoing.

In opposition to Claimant's appeal, Rebecca Snyder, Employer's business office manager, testified that the only time Claimant communicated with his supervisor between the dates of his injury and his termination was on June 18th when he advised that he would be unable to work until June 23rd. She explained that during that conversation, Employer notified Claimant that he needed to provide a doctor's note but one was not provided. She further stated that Claimant called off again on June 23rd and on June 27th, and that Employer received the disability certificate excusing Claimant from work until July 7th.

Ms. Snyder recalled that on June 27th, she advised Claimant of the need to complete his FMLA paperwork and asked him to contact her to further discuss this matter the following week, but that he did not do so and did not return calls from his supervisor. She explained that on July 7th, the date Claimant was scheduled to return to work, he texted one of the other cooks, advising that he would be unable to return. Later that day, Ms. Snyder contacted Claimant, granting him an extension with regard to the FMLA paperwork until July 11th and informing him that he needed to speak to his supervisor. Although Claimant was scheduled to work on July 9th and 10th, he neither reported to work nor called off those days. He did, however, call Ms. Snyder

5

and request that she resend him the FMLA paperwork via fax, which she did,[6] and reiterated that he needed to contact his supervisor. On July 11th, Claimant again failed to report to work or to call off.

According to Ms. Snyder, on July 11th, Claimant contacted her, stating that he did not receive the FMLA paperwork but would pick up a hard copy from her office by noon. At 3:00 p.m., Claimant appeared for the paperwork and advised that he was taking it straight to his physician's office for completion and that he would fax a final copy to Employer by the end of the day. However, Ms. Snyder stated that on July 15th, she received a voicemail that Claimant left on July 11th informing her that the doctor could not fill out the paperwork. When she did not hear back from Claimant after leaving him a voicemail on July 14th, she called him again on July 15th, and he advised that the paperwork would not be completed until at least July 16th. She continued, "I informed him that we needed the paperwork back by the previous Friday, and I also informed him that due to the fact that he has no – had no contact with his supervisor whatsoever and he's been a no-call, no-show for three times that his employment was terminated." (C.R., Referee's Hearing (9/22/2014) at 12.)

The next day, Ms. Snyder received another disability certificate excusing Claimant from work from July 7th through July 21st, again noting Claimant's total incapacitation. At the same time, Claimant's FMLA paperwork was faxed to Employer. On September 17th, Claimant's physician provided another disability

---

[6] Ms. Snyder further testified that she received a confirmation receipt of her fax. Nonetheless, she did not offer the receipt into evidence.

6

certificate, releasing Claimant to return to work without restrictions. With respect to light-duty work, Ms. Snyder explained, "We have a few employees that are on light duty that we offer light duty for. I didn't have a light duty slip from [Claimant]." (*Id.* at 20.)

The Referee noted the gap between the physician's disability certificate, noting total disability which expired on July 21st and his certificate releasing Claimant without restrictions as of September 17th, and acknowledged that "maybe from July 21, maybe he could do some work." (*Id.* at 17.) Also, Claimant's FMLA paperwork indicated that as of the date it was completed (July 16th), Claimant was unable to stand, walk, sit for prolonged periods of time or lift over 15 pounds.

Based on the testimony and evidence presented at the hearing, the Referee determined that Claimant had a necessitous and compelling reason for not returning to work from June 19, 2014, through July 7, 2014, because he was unable to work as a result of his injury and, therefore, that he was not ineligible for benefits under Section 402(b) of the Law for this period. *See* 43 P.S. §802(b). However, the Referee concluded that Claimant did not have a necessitous and compelling reason for failing to submit the required disability certificates and FMLA paperwork to Employer prior to his termination on July 15th and, as such, that Claimant was ineligible for benefits under Section 402(b) of the Law with regard to the claim week ending July 19, 2014. The Referee also reasoned that Claimant was ineligible for benefits under Section 401(d)(1) of the Law for July 19, 2014, through September 13, 2014, because Claimant was totally incapacitated until September 17th as per his doctor's disability certificates. *See* 43 P.S. §801(d)(1). The Referee noted that

7

Claimant's ineligibility under Section 401(d)(1) of the Law ended as of the week ending September 20th. As a result, the Referee affirmed the Unemployment Compensation Service Center's order as modified.[7]

Claimant appealed to the Board, which remanded the matter for another hearing to allow for additional testimony regarding the merits of the case in light of Section 402(e) of the Law, 43 P.S. §802(e), relating to willful misconduct.[8] Subsequently, the Board affirmed the Referee's decision in part and reversed in part, holding that "[C]laimant is not disqualified from receiving benefits under the provisions of Section 401(d)(1) of the Law for the week at issue" but that he "is ineligible for benefits under the provisions of Section 402(e) of the Law." (Board's Decision and Order (2/24/15) at 4.) Specifically, the Board determined that Claimant was able and available to work light-duty for the week at issue as demonstrated by the fact that he was working a part-time job at that time. However, the Board found that because Claimant failed to establish good cause for his unreported absences, failed to return his FMLA paperwork by July 11th, and waited until July 11th to provide the paperwork to his physician, Employer satisfied its burden of proving that Claimant engaged in willful misconduct.[9] Claimant filed a request for reconsideration which the Board denied and this appeal followed.[10]

---

[7] The Referee made no determinations with regard to Section 402(e) of the Law, 43 P.S. §802(e).

[8] At the hearing that followed, the parties did not present any new evidence but only reiterated their previous testimony.

[9] "Willful misconduct" has been defined as:

**(Footnote continued on next page…)**

8

## II.

### A.

On appeal, Claimant contends that he did not engage in willful misconduct under the Law because he submitted his FMLA documents to his Employer as soon as possible. An employer bears the burden of proving that a claimant engaged in willful misconduct rendering the claimant ineligible for unemployment compensation benefits. *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 368−69 (Pa. Cmwlth. 2008). Where an employee's conduct is justifiable or reasonable under the circumstances, it does not constitute

---

**(continued…)**

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has a right to expect of an employee*, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Rossi v. Unemployment Compensation Board of Review*, 676 A.2d 194, 197 (Pa. 1996) (emphasis added). To engage in willful misconduct, an employee must demonstrate a "serious disregard of his responsibilities to his employer, in a manner that is in some real sense detrimental to his employer's interests. The question is primarily a matter of degree, and the inquiry must be framed in terms of whether the employe[e]'s acts rise to the level of willful misconduct." *O'Keefe v. Unemployment Compensation Board of Review*, 333 A.2d 815, 818 (Pa. Cmwlth. 1975).

[10] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

willful misconduct.  *Id.*  As we stated in *Adept Corporation v. Unemployment Compensation Board of Review*:

> Absenteeism in and of itself does not amount to willful misconduct.  Even excessive absenteeism, where justified or where properly reported according to company policy, although a legitimate basis for discharge, does not constitute willful misconduct or disqualify a claimant from receiving unemployment compensation benefits….
>
> …When an employee has good cause for his conduct and can show that his actions were justifiable or reasonable under the circumstances, he may not be charged with willful misconduct.

437 A.2d 109, 110 (Pa. Cmwlth. 1981) (internal citations omitted).

In the instant case, it is not necessarily Claimant's absences that are at issue; indeed, Employer does not contend that Claimant lacked good cause for his absences on July 7, 9, 10 or 11, 2014.  Rather, Employer took issue with Claimant's failure to provide advance notice of the absences.  Even where an employer has not established the existence of a work policy governing absenteeism or the advanced reporting of absences, an employee must uphold "certain standards of behavior which the employer has the right to expect of [its] employees," and this standard includes, where reasonable under the circumstances and not "prohibitively onerous," advanced notice of impending absences. *Thompson v. Unemployment Compensation Board of Review*, 381 A.2d 1024, 1026 (Pa. Cmwlth. 1978); *Beck v. Unemployment Compensation Board of Review*, 370 A.2d 391, 393 (Pa. Cmwlth. 1977) (stating that absenteeism rises to the level of willful misconduct only when an additional element, such as "[f]ailure to notify the employer in advance of the absence," is present); *see*

*also Blystone v. Unemployment Compensation Board of Review*, 342 A.2d 772, 773 (Pa. Cmwlth. 1975) (affirming the Board's order upholding a referee's denial of unemployment compensation benefits where the claimant left work early without first notifying his employer and, therefore, engaged in willful misconduct).

The undisputed evidence establishes that Claimant did not provide advance notice to Employer of his absences on July 7, 9, 10 or 11, 2014. Although those absences were very likely justified as medically necessary, Claimant's failure to provide advanced notice was neither justified nor reasonable under the circumstances. Claimant has failed to establish any reason whatsoever why he could not have provided Employer such notice with or without a physician's certification, particularly when he physically appeared at work on July 11th to retrieve hard copies of the FMLA paperwork. Moreover, despite Employer's directives to the contrary, Claimant failed to contact his supervisor following his initial call on June 18th through the date of his termination. For these reasons alone, there exists substantial evidence to support the Board's finding that Claimant engaged in willful misconduct.[11]

---

[11] We do not find, however, that Claimant's failure to submit his FMLA paperwork in compliance with the deadlines mandated by Employer establishes Claimant's willful misconduct. Indeed, Claimant was under no duty to request FMLA leave. Ostensibly, Claimant sought such leave as a means of protecting his employment while he recovered from his injuries. Because his leave ultimately was not approved, his absences were not protected under FMLA. Although his failure to obtain FMLA leave subjected him to discharge for his absences, it did not establish willful misconduct that disqualifies him from receiving unemployment compensation benefits.

11

**B.**

Claimant further claims that his termination was never communicated to him, verbally or in writing. Ultimately, this argument is irrelevant as the Board found that Employer discharged Claimant on July 15th, regardless of whether this fact was communicated to Claimant on that date. At any rate, the record belies Claimant's argument. It is undisputed that after his termination on July 15th, Claimant never attempted to return to work. If, as he contends, he was unaware of his discharge, there is no reason he would not have reported to work after September 17th , the day on which he was released without restrictions.[12]

Accordingly, because substantial evidence supports the finding that Claimant failed to provide Employer advanced notice of his absences and failed to communicate with his supervisor during the course of his absences, despite Employer's directives to the contrary, Employer sustained its burden of proving that Claimant engaged in willful misconduct, and the Board's decision denying benefits pursuant to Section 402(e) of the Law, 43 P.S. §802(e), is affirmed.

---

DAN PELLEGRINI, President Judge

---

[12] Claimant also argues that he is not ineligible for benefits under Section 402(b) of the Law, 43 P.S. §802(b). However, because we have already determined that Claimant is ineligible for benefits pursuant to Section 402(e) of the Law, 43 P.S. §802(e), for this period, we need not address this issue. Likewise, we will not address Claimant's contention that the Board erred in concluding that he was not able or available to work since the Board, in actuality, found in Claimant's favor on this issue.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carnell A. Jefferson Jr., : 
                Petitioner : 
                 : 
           v. : 
                 : 
Unemployment Compensation Board : 
of Review, : 
              Respondent : No. 473 C.D. 2015

# **O R D E R**

AND NOW, this <u>10th</u> day of <u>September</u>, 2015, the order of the Unemployment Compensation Board of Review dated February 24, 2015, at No. B-575425, is affirmed.

_____
DAN PELLEGRINI, President Judge
