IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoenix Contractors, Inc.,            :
               Petitioner      :
                               :    No.  812 C.D. 2018
            v.              :
                               :    Submitted:  August 30, 2019
Unemployment Compensation      :
Board of Review,                       :
               Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED:  January 30, 2020

        Phoenix Contractors, Inc. (Employer) petitions for review from the April 26, 2018 order of the Unemployment Compensation Board of Review (Board). In this order, the Board reversed a referee's decision finding that Sarah Ham (Claimant) committed willful misconduct and was ineligible for unemployment compensation (UC) benefits under section 402(e) of the Unemployment Compensation Law (Law)[1] and concluded, instead, that Claimant had established just cause for her conduct and,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). In relevant part, section 402(e) states that an employee shall be ineligible for compensation for any week in which her unemployment is due to willful misconduct connected with her work. An employer bears the burden of proving willful misconduct and if the employer meets its burden, the burden then shifts to the claimant to demonstrate good cause for her actions. *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009-10 (Pa. Cmwlth. 2014); *see Boyer v. Unemployment Compensation Board of Review*, 454 A.2d 524, 525 (Pa. 1982).

therefore, granted her UC benefits. The dispositive issue on appeal is whether the Board erred in failing to address a purported additional reason given by Employer for discharging Claimant. Concluding that the Board did not, we affirm.

Claimant worked for Employer as an apprentice bricklayer from January 2017, to September 26, 2017, when Employer terminated her employment. Claimant thereafter applied for UC benefits. In paragraph 6 of the "Employer Questionnaire," entitled, "Please indicate the reason the claimant was separated," Employer checked the boxes for "Absenteeism" and "Tardiness." (Reproduced Record (R.R.) at 16.)[2] Notably, Employer did not check the "Other" box and did not complete the space provided for it to list the "other" or additional "reason(s) that the claimant was separated." (R.R. at 16.)

In the same paragraph of the Employer Questionnaire, under the heading, "Please describe the final incident that caused the claimant to be separated," Employer stated that Claimant "was dismissed from Local #1 [Union]." (R.R. at 16.) In paragraph 12 of the Employer Questionnaire, which advised Employer, "You may provide any other information which you feel may have a bearing on the claimant's eligibility," Employer stated as follows: "[W]hen [Claimant] was late it held up the crew. She was on a two[-]man team. Also Claimant was terminated by our [Union]. [Employer] can only hire . . . [U]nion employees." (R.R. at 17.)

On October 20, 2017, the local service center granted Claimant UC benefits. The local service center determined that Claimant did not engage in willful

---

[2] We note that Employer's reproduced record does not include the lower case "a" following the page number as required by Pa.R.A.P. 2173.

2

misconduct, with respect to absenteeism or tardiness, because Employer did not demonstrate that Claimant was "warned about her attendance." (R.R. at 24.)

Employer then filed an appeal. In its notice of appeal, in the section marked, "Reason(s) for disagreeing with the determination and filing this appeal are," Employer contested the local service center's determination concerning absenteeism or tardiness. More specifically, Employer stated that Claimant "was warned numerous times by her supervisor." (R.R. at 29.) In the same section of the notice of appeal, Employer stated, in relevant part, that it further disagreed with the local service center's determination on the following ground: "Also [Claimant] was thrown out of Local #1 [Union] for . . . missing [A]pprentice [S]chool. As a Signatory Contractor we can only hire Union [] Employees." (R.R. at 29.) The referee then conducted a hearing.

At the hearing, Tom Collins, the President of Employer, and Claimant presented evidence regarding Claimant's incidents of absenteeism and tardiness and Claimant's reason for being absent and late, *i.e.*, problems with public transportation. Although this topic was the major focus of the hearing, the following exchange occurred while the parties and referee were discussing the reasons for Claimant's discharge:

> R [Referee][:] *What reason if any was she given for the discharge*?
>
> EW [Employer][:] *Tardiness and absenteeism.*
>
> R[:]     All right, and so what was her record here?
>
> EW[:] She was given to us from the Union . . . .
>
> R[:]   Did she, did she offer an explanation about her attendance?

3

EW[:] Transportation.

R[:] What was the issue with the transportation?

EW[:] She was always getting the bus late, *also as a sidebar I'm a Union Signatory Contractor.* She was thrown out of the Union Hall for the same reasons [i.e., attendance problems with the Apprentice Program]. *I have a letter, letter from the Union terminating her. I can't even hire her back if I want to hire her back.*

R[:] Okay.

EW[:] They and we have 100% employment in Union Hall right now, so busy. So, *but the Union fired her and sen[t] [Claimant] out of the Union for non-attendance and [she] got expelled from the Union.*

R[:] Okay.

EW[:] *So, I can't hire her back [even] if I wanted to.*

R[:] Okay.

(R.R. at 42-43) (emphasis added).

Collins then offered into evidence a letter, marked as Employer's Exhibit #1. (R.R. at 44.) Dated November 27, 2017, which was two months after Claimant was terminated, the letter was authored by a representative of the Union, Bricklayers & Allied Craftworkers Local # 1, addressed to Collins. This letter stated as follows: "Per our conversation at the Gallery Mall Project, [Claimant] has been terminated from the [a]pprentice program due to non-attendance at the Apprentice School as well as work with [Employer]. Therefore, [Claimant] has been expelled from the Union." (R.R. at 47.)

In a decision and order mailed on December 21, 2017, the referee reversed the local service center and determined that Claimant was ineligible for UC

4

benefits under section 402(e) of the Law. The referee found that Claimant "developed a record of tardiness and absenteeism throughout the course of her employment" and was late nine times and absent three days (during an unspecified time frame), which "adversely impacted [Employer's] operations." (R.R. at 58.) The referee further found that Claimant had not established "good cause for the substandard attendance record." (R.R. at 59.)

Claimant filed a petition for appeal with the Board. In its decision and order dated April 26, 2018, the Board issued its own findings of fact and conclusions of law. In sum, the Board found that "[E]mployer discharged [Claimant] for tardiness and absenteeism." (R.R. at 67.) The Board further found that

> [C]laimant credibly testified that her tardiness was caused by unreliable transportation and that she always notified [E]mployer that she would be late. [C]laimant [left] at 4:30 a.m. to reach work by 6:30 a.m., so she was reasonably diligent in attempting to reach work on time. Despite this diligence, [C]laimant was late nine times and missed three shifts in eleven weeks.

(R.R. at 68.)

Based on these findings, the Board concluded that Claimant had established good cause for her conduct and that her absenteeism and tardiness were not a result of willful misconduct. Therefore, the Board reversed the referee's decision and order, determined that Claimant was not ineligible for benefits under section 402(e) of the Law, and granted her UC benefits.

Before this Court,[3] Employer does not dispute the Board's conclusion that Claimant had good cause for her absenteeism and tardiness. Rather, Employer's

---

[3] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether findings of fact are supported **(Footnote continued on next page…)**

sole argument is that the Board erred in failing to consider whether Claimant's dismissal/termination by the Union, specifically her failure to attend Apprentice School successfully, amounted to willful misconduct.

Conversely, the Board contends that Employer is essentially asserting a new, belated reason for discharging Claimant and failed to establish that Claimant's alleged dismissal/termination by the Union and/or unsatisfactory attendance at Apprentice School was the actual cause for her discharge.

It is well-settled that "a claimant who has been discharged for multiple reasons is disqualified from receiving benefits even if only one of those reasons amounts to willful misconduct." *Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007). However, "[a]n employer is bound by its stated reasons for an employee's dismissal and cannot raise new reasons at the hearing." *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 344 n.5 (Pa. Cmwlth. 2008). "[T]he employer must also prove that the act in question was the actual reason for the claimant's discharge." *Panaro v. Unemployment Compensation Board of Review*, 413 A.2d 772, 774 (Pa. Cmwlth. 1980); *accord Charles v. Unemployment Compensation Board of Review*, 764 A.2d 708, 711 n.4 (Pa. Cmwlth. 2000).

In *Century Apartments, Inc. v. Unemployment Compensation Board of Review*, 373 A.2d 1191 (Pa. Cmwlth. 1977), the claimant was fired for failing to adjust her timesheet to reflect that she had left work early one afternoon. The Board ruled that the claimant was not ineligible for UC benefits. The employer argued on

---

**(continued…)**

by substantial evidence. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1162 n.2 (Pa. Cmwlth. 2013).

6

appeal to this Court that the act of leaving work early, standing alone, constituted willful misconduct and was, therefore, a sufficient basis on which to deny the claimant benefits. In rejecting the employer's argument, we noted that the claimant "was not discharged for this reason" and cited the employer's testimony that "he dismissed her . . . for misstating her time." *Id.* at 1192. Ultimately, this Court differentiated the claimant's act of failing to provide a timesheet that reflected her early departure from work from the claimant's early departure itself, discerning the two to be different grounds or reasons for termination. In so doing, we held that "while leaving work early may be willful misconduct, it may not be assigned as a reason for denying unemployment compensation if it was not a cause of the claimant's unemployment." *Id.*

Likewise, in *Mancini v. Unemployment Compensation Board of Review*, 412 A.2d 702 (Pa. Cmwlth. 1980), the claimant missed two days of work due to a work-related injury and the employer declined to accept a medical certification from the claimant's doctor to substantiate the absences. The claimant continued to miss work, and the employer directed the claimant to report to the employer's clinic to have a doctor examine him. The claimant declined to do so and received a letter from the employer notifying him that he had been suspended for five days with "intent to discharge for *failing to attend work*." *Id.* at 703 (emphasis in original). The claimant then decided to schedule an appointment with a doctor from the employer's clinic, but the employer terminated the claimant before the date on which the appointment was scheduled.

On appeal, this Court concluded that the claimant's conduct with respect to scheduling and attending an appointment with the employer's physician was not a

7

reason for the claimant's discharge. Relying on *Century Apartments, Inc.*, we stated in pertinent part:

> Although the referee and the Board found that [the claimant] was discharged for excessive absences *and* his refusal to be examined by a company doctor, there is no substantial evidence in the record of this case to support a finding that [the claimant] was discharged for refusing to be examined by the company doctor . . . . [A]s we have previously noted, [the employer's] suspension letter of March 24 informed Claimant that he would be discharged for failure to report for work. Although reference is made in the testimony of [the employer's] representative concerning [the claimant's] refusal to be examined by the company doctor, there is nothing in the testimony that would indicate that [the claimant] was discharged for any reason other than his absences. Accordingly, even were we to find that the refusal to see [the employer's doctor] constituted willful misconduct, it would be irrelevant because there is no evidence that [the claimant] was discharged for that behavior.

*Mancini*, 412 A.2d at 704 (emphasis in original); *see also Mine Safety Appliances Co. v. Unemployment Compensation Board of Review*, 423 A.2d 798, 800 (Pa. Cmwlth. 1980) ("The employer's letter to claimant states, and the employer's representative testified, that claimant was discharged for sleeping on the job. Violation of the company rule against taking extended lunch breaks on company premises may not be assigned as a reason for denying compensation if it was not a cause of the claimant's unemployment.").

Our decisions in *Century Apartments, Inc.* and *Mancini* are directly applicable here. In the "Employer Questionnaire," Employer checked the boxes for "Absenteeism" and "Tardiness" as the reason for Claimant's discharge. Employer also testified at the hearing that Claimant was discharged for absenteeism and tardiness. Importantly, Employer did not testify that he fired Claimant because the

8

Union terminated her. Rather, Employer testified that he fired Claimant for absenteeism and tardiness, and that he could not hire her back because she was fired from the Union. Finally, although Employer's notice of appeal to the referee and Exhibit #1 indicate the reasons why the Union discharged Claimant, they are markedly insufficient to establish that these were the *reasons* Employer terminated Claimant.

Therefore, on this record, we conclude that the Board did not err in not considering whether Claimant committed willful misconduct for being dismissed/terminated by the Union for failing to attend Apprentice School in a satisfactory manner. Quite simply, Employer did not preserve this specific issue as a reason for Claimant's discharge and failed to adduce sufficient evidence to prove that it was the actual reason for Claimant's discharge. Absent such proof, the fact that Claimant was dismissed/terminated by the Union for failing to successfully attend Apprentice School "may not be assigned as a reason for denying unemployment compensation [because] it was not a cause of [] [C]laimant's unemployment." *Century Apartments, Inc.*, 373 A.2d at 1192.

Accordingly, following our decisions in *Century Apartments, Inc.* and *Mancini*, we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in this decision.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoenix Contractors, Inc.,                 :
           Petitioner              :
                               :   No. 812 C.D. 2018
          v.                     :
                               :
Unemployment Compensation                  :
Board of Review,                           :
           Respondent              :

## *ORDER*

AND NOW, this 30th day of January, 2020, the April 26, 2018 order of the Unemployment Compensation Board of Review is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge