688 A.2d 113

RICKY B. FENNELL, APPELLANT, v. BOARD OF REVIEW AND MERCER MEDICAL CENTER, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 11, 1996—Decided February 7, 1997.

Before Judges KING and KEEFE.

Legal Aid Society of Mercer County, attorneys for appellant (*Patrick N. Budd*, attorney; *Adena Adler*, of counsel and on the brief).

*Peter Verniero*, Attorney General of New Jersey, attorney for respondent Board of Review (*Susan C. Berger*, Deputy Attorney General, on the brief).

No brief filed on behalf of respondent Mercer Medical Center.

The opinion of the court was delivered by

KING, P.J.A.D.

This is an appeal from a final decision of the Board of Review which denied appellant unemployment compensation benefits. Appellant had been confined to jail for nine months, unable to raise bail, and lost his job. The criminal charges were eventually dropped. We agree with the Board of Review and affirm.

Appellant was employed in the housekeeping department of the Mercer Medical Center until September 21, 1994 when he was arrested for aggravated assault and lesser-included charges. He

remained in the Mercer County Jail until June 19, 1995 because he was unable to post bail. Defendant made all reasonable efforts to get his employer to hold his job open until his release. On January 15, 1995 Mercer Medical Center told him that he was terminated but that he could apply for a position when he was released. On June 22, 1995, three days after his release, he applied for his old job but was not rehired. On June 25, 1995 he filed this claim for unemployment compensation benefits. The Appeal Tribunal upheld the denial of benefits because appellant's reason for leaving his job was incarceration, a personal problem not attributable to work. The Board of Review agreed and affirmed.

Our Unemployment Compensation Act, *N.J.S.A.* 43:21–1 to –56, was enacted in 1936 to afford protection against the hazards of economic insecurity due to involuntary unemployment. *Yardville Supply Co. v. Bd. of Review*, 114 *N.J.* 371, 374, 554 *A.*2d 1337 (1989). In order to further its remedial and beneficial purposes, the law is liberally construed in favor of allowing benefits but preservation of the fund against claims by those not intended to share in its benefits is also important. *Yardville*, 114 *N.J.* at 374, 554 *A.*2d 1337. "The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases." *Yardville*, 114 *N.J.* at 374, 554 *A.*2d 1337; *Krauss v. A. & M. Karagheusian*, 13 *N.J.* 447, 455–56, 100 *A.*2d 277 (1953).

A claimant is disqualified for unemployment benefits under *N.J.S.A.* 43:21–5(a):

> For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment....

The clause "voluntarily without good cause attributable to such work" was added to the statute in 1961 to eliminate the eligibility of persons who leave work for good but personal reasons. *Self v. Bd. of Review*, 91 *N.J.* 453, 457, 453 *A.*2d 170 (1982). Personal reasons held by our courts as insufficient good cause attributable to work include: domestic violence causing change of residence,

*Pagan v. Bd. of Review,* 296 *N.J.Super.* 539, 687 *A.*2d 328 (App. Div.1997); frustration at not receiving an expected pay raise, *DeSantis v. Bd. of Review,* 149 *N.J.Super.* 35, 38, 372 *A.*2d 1362 (App.Div.1977); absence from work precipitated by relocation due to an intolerable home living situation, *Roche v. Bd. of Review,* 156 *N.J.Super.* 63, 65, 383 *A.*2d 453 (App.Div.1978); and absence from work due to transportation, commuting difficulties or financial problems. *Self,* 91 *N.J.* at 460, 453 *A.*2d 170; *White v. Bd. of Review,* 146 *N.J.Super.* 268, 270, 369 *A.*2d 937 (App.Div.1977); *Morgan v. Bd. of Review,* 77 *N.J.Super.* 209, 213–14, 185 *A.*2d 870 (App.Div.1962).

■ The purpose of the New Jersey statute "is to differentiate between (1) a voluntary quit with good cause attributable to work and (2) a voluntary quit without good cause attributable to work." *DeLorenzo v. Bd. of Review,* 54 *N.J.* 361, 363, 255 *A.*2d 248 (1969). A departure not attributable to work is a "voluntary departure without good cause related to work" which will disqualify the employee from receiving unemployment benefits. *Self,* 91 *N.J.* at 457, 453 *A.*2d 170; *DeLorenzo,* 54 *N.J.* at 363, 255 *A.*2d 248. Causes personal to the claimant and not attributable to the work come within the disqualification language of the statute. *White v. Bd. of Review,* 146 *N.J.Super.* at 270, 369 *A.*2d 937; *Stauhs v. Bd. of Review,* 93 *N.J.Super.* 451, 226 *A.*2d 182 (App.Div.1967). The only recognized exception to the rule is where an employee, unable to work because of illness "does those things reasonably calculated to protect the employment and, notwithstanding that she [he] is not reinstated, there is no voluntary leaving of work." *DeLorenzo,* 54 *N.J.* at 364, 255 *A.*2d 248; *Yardville,* 114 *N.J.* at 376, 554 *A.*2d 1337; *Self,* 91 *N.J.* at 457, 453 *A.*2d 170.

*Self* involved the unemployment claims of two employees who travelled to work together by car. The car became inoperable, public transportation was unavailable, and the claimants were unable to report to work. Both employees notified their supervisors of their inability to obtain transportation to their job. Both filed claims and were denied benefits. We held that when a

change in circumstances rendered the ability to get to work impossible the employee has no choice of whether or not to go to work, the action is not voluntary. We further held that when the only practical means of getting to work is withdrawn through no fault of the employee, such a voluntary quit is attributable to work and does not fall within the legislative intent of disqualifying employees from unemployment benefits pursuant to *N.J.S.A.* 43:21–5(a). The Supreme Court reversed and said that although a commuting problem can be a good personal reason for leaving a job, it is not related or attributable to the work and is a personal problem. *Self,* 91 *N.J.* 453, 453 *A.*2d 170. The Court explained that voluntariness of the quit simply concerned whether the employer forced the employee to quit. The Court held that it was compelled by the statute and the findings of the administrative agency to recognize the termination of these employees as voluntary and denied unemployment compensation benefits. *Self,* 91 *N.J.* at 457–58, 453 *A.*2d 170. *See also White v. Bd. of Review,* 146 *N.J.Super.* 268, 369 *A.*2d 937 (parolee's commuting problem with work release job).

Similarly, *Yardville,* which involved a truck driver who lost his job when his driver's license was suspended for six months following his conviction of a non-job related charge of driving while intoxicated, denied unemployment compensation benefits. The claimant immediately informed his employer of the suspension of his license and inquired into the possibility of continuing to work at Yardville in a non-driving capacity. He was told that no other work was available. The unemployment benefits claim was approved and affirmed by both the agency and this court. We held that his loss of employment caused by the suspension of his driving privileges did not constitute a voluntary quit pursuant to *N.J.S.A.* 43:21–5(a). The Supreme Court again reversed and held that because of his conduct the claimant was no longer able to perform the job he was hired to do. *Yardville,* 114 *N.J.* at 375, 554 *A.*2d 1337. The Court found that the claimant had left work voluntarily without good cause attributable to such work, did not fall within any recognized exception, and was ineligible for unem-

ployment compensation benefits. *Yardville,* 114 *N.J.* at 376, 554 *A.*2d 1337. The Court also thought it unfair to make the employer bear the economic costs of the claimant's misconduct. *Yardville,* 114 *N.J.* at 375, 554 *A.*2d 1337.

Here appellant's reason for leaving work was his personal problem, incarceration on criminal charges and his inability to raise enough money to post bail. These unfortunate economic and legal problems were not related to his employment. Nor is an employee's intent to quit either relevant or controlling, unless the judicially-created exception for illness is implicated. *See DeLorenzo,* 54 *N.J.* at 363–64, 255 *A.*2d 248; *Garcia. v. Bd. of Review,* 191 *N.J.Super.* 602, 606–07, 468 *A.*2d 729 (App.Div.1983).

Appellant urges that we follow other jurisdictions and add another exception to the disqualification rule. At least seven jurisdictions to some extent recognize claims for benefits where an employee has been incarcerated. *See Kaylor v. Department of Human Resources,* 32 *Cal.App.*3d 732, 108 *Cal.Rptr.* 267 (1973) (jailed because of inability to pay $120 fine); *Parker v. Dept. of Labor & Employment Security,* 440 *So.*2d 438 (Fla.Dist.Ct.App. 1983) (criminal charges dropped after three weeks in jail); *Holmes v. Review Bd.,* 451 *N.E.*2d 83 (Ind.Ct.App.1983) (2–1 decision) (criminal charges dropped); *Shoennagel v. Louisiana Office of Employment,* 413 *So.*2d 652 (La.Ct.App.1982); *Ford v. Labor & Industrial Relations Commission of Missouri,* 841 *S.W.*2d 255 (Mo.Ct.App.1992) (evidence of lack of guilt of charges would permit benefits); *State, Emp. Sec. Dept. v. Evans,* 111 *Nev.* 1118, 901 *P.*2d 156 (1995) (3–2 decision).

In Arizona eligibility is particularly fact-sensitive under the agency's promulgated guidelines. *Magma Copper Co. v. Arizona Dept. of Econ. Sec.,* 128 *Ariz.* 346, 625 *P.*2d 935 (1981) (Judge Sandra Day O'Connor). The particular factual circumstances surrounding the incarceration seem to control in Pennsylvania. *See Anderson v. Unemp. Comp. Bd. of Review,* 129 *Pa.Cmwlth.* 110, 564 *A.*2d 1046 (1989), *pet. denied,* 525 *Pa.* 613, 577 *A.*2d 544 (1990); *Frank v. Unemp. Comp. Bd. of Review,* 124 *Pa.Cmwlth.*

299, 556 *A.*2d 15 (1989); *Wertman v. Unemp. Comp. Bd. of Review,* 103 *Pa.Cmwlth.* 376, 520 *A.*2d 900 (1987); *Glasser v. Unemp. Comp. Bd. of Review,* 45 *Pa.Cmwlth.* 29, 404 *A.*2d 768 (1979). New York appellate courts disagree. *See In re Claim of Benjamin,* 175 *A.D.*2d 936, 572 *N.Y.S.*2d 970 (1991) (allowing benefits) (4–1 decision); *contra, In re Claim of Opoka,* —— *A.D.*2d ——, 647 *N.Y.S.*2d 874 (1996) (5–0 decision).

Other jurisdictions routinely deny claims where incarceration causes an absence from employment. *Bivens v. Allen,* 628 *So.*2d 765 (Ala.Civ.App.1993); *Johnson v. Dep't. of Indus. Rel.,* 447 *So.*2d 747 (Ala.Civ.App.1984); *Sherman/Bertram, Inc. v. California Dep't. of Emp.,* 202 *Cal.App.*2d 733, 21 *Cal.Rptr.* 130 (1962); *Carter v. Caldwell,* 151 *Ga.App.* 687, 261 *S.E.*2d 431 (1979); *Alexander v. Michigan Employment Security Comm'n,* 4 *Mich. App.* 378, 144 *N.W.*2d 850 (1966); *Smith v. American Indian Chem.,* 343 *N.W.*2d 43 (Minn.Ct.App.1984). In New Jersey, two administrative cases have denied benefits to claimants who have been incarcerated. *In the Matter of E.F.B.,* 95 *N.J.A.R.*2d (UCC) 8, 1994 *WL* 799313 (1994); *In the Matter of J.J.L.,* 95 *N.J.A.R.*2d (UCC) 1, 1994 *WL* 738273 (1994) (2–1 decision).

Our Supreme Court clearly stated in *Self* that unemployment compensation is a benefit conferred by the Legislature which has set limits on that benefit. If additional exceptions to the rule are created, this change must be made by the Legislature. *Self,* 91 *N.J.* at 460, 453 *A.*2d 170.

Appellant lost his job because of incarceration in default of bail. No matter how sympathetic the facts, this bore no relationship to his work. The agency's decision to disqualify appellant from benefits because he voluntarily left his job without good cause attributable to work is supported by substantial credible evidence and is neither arbitrary nor capricious.

Affirmed.