NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4973-17T2

CLARENCE HALEY,

     Appellant,

v.

BOARD OF REVIEW,
and GARDEN STATE
LABORATORIES, INC.,

     Respondents.

_____

APPROVED FOR PUBLICATION

January 24, 2020

APPELLATE DIVISION

Argued October 17, 2019 – Decided January 24, 2020

Before Judges Alvarez, Nugent and Suter.

On appeal from the Board of Review, Department of Labor, Docket No. 143,935.

Jennifer B. Condon argued the cause for appellant (Seton Hall University School of Law, Center for Social Justice, attorneys; Jennifer B. Condon, of counsel and on the briefs; Jenna Passerino, Jennifer A. Cacchioli, and Andrew N. Koske, on the briefs).

Andy Jong, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer and Donna Sue Arons, Assistant Attorneys General, of counsel; Andy Jong, on the briefs).

Tess Meiling Borden argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (American Civil Liberties Union of New Jersey Foundation, attorneys; Tess Meiling Borden and Jeanne M. LoCicero, on the brief).

Respondent Garden State Laboratories, Inc., has not filed a brief.

The opinion of the court was delivered by

SUTER, J.A.D.

Clarence Haley appeals the May 24, 2018 final decision of the Board of Review (Board), affirming the decision of the Appeal Tribunal that denied his claim for unemployment compensation.  We affirm.

## I.

Haley was employed as a maintenance worker from May 2, 2017, until he was arrested on December 14, 2017, and charged with five separate criminal warrants.[1]  His request for pretrial release was not granted.[2]  His mother

---

[1] The warrants were for kidnapping, robbery, burglary, unlawful possession of a weapon and possession of a weapon for an unlawful purpose.

[2] The Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, became effective on January 1, 2017.  "[T]he Act replaced the system's prior heavy reliance on monetary bail.  The law instead calls for an objective evaluation of each defendant's risk level and consideration of conditions of release . . . .  In that way, low-level offenders will not be penalized because they cannot afford to post bail."  State v. Robinson, 229 N.J. 44, 54 (2017).  "A defendant may be

contacted his employer because he wanted to keep his job, but the position was filled after December 21, 2017. Haley was released from custody on February 7, 2018, after a grand jury returned a "[no-b]ill," meaning it "did not find sufficient evidence to sustain the return of an [i]ndictment." The prosecutor dismissed all the criminal warrants against Haley.

Haley applied for unemployment compensation shortly thereafter. The Deputy Director denied the claim. Haley appealed to the Appeal Tribunal. Following a hearing, it denied his claim on April 13, 2018. Haley was disqualified for unemployment benefits because he was "separated due to his absence from work, which was a direct result of his incarceration." Haley was "considered to have left the job voluntarily in accordance with N.J.A.C. 12:17-9.1." The Appeal Tribunal noted there was "no evidence that the claimant was falsely imprisoned nor was he involved in a case of mistaken identity." Although Haley had a "compelling reason for leaving work," the Appeals Tribunal found his "reason is personal." He was "considered to have left voluntarily without good cause attributable to such work and is disqualified for

_____

detained pretrial only if, after a hearing, a judge finds 'by clear and convincing evidence that no release conditions would reasonably assure the defendant's appearance in court, the safety of the community, or the integrity of the criminal justice process.'" State v. Pinkston, 233 N.J. 495, 503 (2018) (quoting State v. Ingram, 230 N.J. 190, 200-01 (2017)).

A-4973-17T2

benefits."  Haley appealed to the Board.  On May 24, 2018, it affirmed the decision of the Appeal Tribunal.

On appeal, Haley argues he should have been granted unemployment compensation because the criminal charges were dismissed.  He contends it was an error to treat pretrial incarceration, where all the charges were dismissed, as a "voluntary" separation from employment under N.J.S.A. 43:21-5(a).  He asserts this is inconsistent with the remedial purpose of the unemployment laws, is unreasonable, wrongly disregards the "vital role" of the grand jury and is out-of-step with a majority of other states.  Haley argues the Board relied on legally irrelevant factual assumptions not supported by the record.

Amicus curiae, the American Civil Liberties Union of New Jersey (the ACLU), argues Haley cannot be said to have voluntarily quit his employment in these circumstances.  The "threshold question" should be whether the departure from work was voluntary, not whether it was work-related.  The ACLU asks us to set aside N.J.A.C. 12:17-9.1(e)(10).[3]  It contends the remedial purpose of the

---

[3]  Because this issue was not raised by Haley, it is not properly before us.  See State v. J.R., 227 N.J. 393, 421 (2017) (providing that an appeals court "does not consider arguments that have not been asserted by a party, and are raised for the first time by an amicus curiae").

unemployment legislation is disserved, and that by denying benefits, persons of color are disproportionately impacted.[4]

## II.

Review of an administrative agency's final decision is limited. <u>Kadonsky v. Lee</u>, 452 N.J. Super. 198, 201-02 (App. Div. 2017). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" <u>Id.</u> at 202 (alteration in original) (quoting <u>In re Stallworth</u>, 208 N.J. 182, 194 (2011)). We "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable." <u>Ardan v. Bd. of Review</u>, 231 N.J. 589, 604 (2018) (quoting <u>In re Election Law Enf't Comm'n Advisory Op. No. 01–2008</u>, 201 N.J. 254, 262 (2010)). The court is not "bound by an unreasonable or mistaken interpretation of that scheme, particularly one that is contrary to legislative objectives." <u>McClain v. Bd. of Review</u>, 237 N.J. 445, 456 (2019) (citing <u>Russo v. Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011)).

---

[4] There was no evidence of the latter point in the record before the Appeal Tribunal or Board.

The Unemployment Compensation Law (the UCL), N.J.S.A. 43:21-1 to -24.30, is remedial in purpose. McClain, 237 N.J. at 457. "The essential objective of the Act 'is to provide some income for the worker earning nothing, because [that worker] is out of work through no fault or act of [the employee].'" Ibid. (quoting Utley v. Bd. of Review, 194 N.J. 534, 543 (2008)). Although the UCL is to be liberally construed to allow for benefits, at the same time "the unemployment insurance trust fund must be protected against the payment of claims to those ineligible for [unemployment insurance] benefits." Ibid. (citing Brady v. Bd. of Review, 152 N.J. 197, 212 (1997)). "The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases." Ardan, 231 N.J. at 602 (quoting Brady, 152 N.J. at 212).

The UCL "protects not only workers who are involuntarily unemployed—those who are laid-off or terminated from their jobs by their employers—but also those who voluntarily quit their jobs for good cause attributable to their work." Utley, 194 N.J. at 543-44. Under N.J.S.A. 43:21-5(a), a claimant is disqualified from unemployment compensation "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work." In applying the UCL, "a court must 'differentiate between (1) a voluntary

6

quit with good cause attributable to the work and (2) a voluntary quit without good cause attributable to the work.'" Ardan, 231 N.J. at 602 (quoting Brady, 152 N.J. at 213-14).

A person seeking benefits under the UCL bears the burden of proving entitlement. Brady, 152 N.J. at 218. The claimant who "leaves work voluntarily, [also] . . . bears the burden to prove [the person] did so with good cause attributable to work." Ibid. (citing Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52 (App. Div. 1964)). "[A]ll relevant factors" are to be considered in this analysis. Utley, 194 N.J. at 548.

Haley contends that because his termination from employment was involuntary, there is no need to consider whether the cause was attributable to his work. We do not agree. This construction is not consistent with the 1961 amendment of the statute. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (providing that "[o]ur duty is to construe and apply the statute as enacted") (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)).

The original UCL "disqualified an employee from receiving unemployment benefits if [the worker] 'ha[d] left work voluntarily without good cause.'" Utley, 194 N.J. at 544 (quoting L. 1936, c. 270, §5). Quitting "for a personal reason that constituted 'good cause' entitled a worker to unemployment

benefits." Ibid. The statute was amended in 1961 to "disqualify claimants who left work for purely personal reasons." Brady, 152 N.J. at 213. Thus, under the UCL, an individual now is disqualified for unemployment benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work" until reemployed as set forth in the statute. N.J.S.A. 43:21-5(a).

We considered the same issue presented here in Fennell v. Board of Review, 297 N.J. Super. 319 (App. Div. 1997). Fennell was arrested in September and was not able to post bail. Id. at 320-21. Although he made reasonable efforts to keep his job, he was terminated from employment in January. Id. at 321. He was not rehired after his release from incarceration in June. Ibid. On appeal, we affirmed the denial of his unemployment benefits claim because the "reason for leaving work was his personal problem, incarceration on criminal charges and his inability to raise enough money to post bail. These unfortunate economic and legal problems were not related to his employment." Id. at 324. We noted disqualification was consistent with the 1961 change in our unemployment statute "to eliminate the eligibility of persons who leave work for good but personal reasons." Id. at 321 (citing Self v. Bd. of

A-4973-17T2

Review, 91 N.J. 453, 457 (1982)). Thus "[n]o matter how sympathetic the facts, [the loss of his job] . . . bore no relationship to his work." Id. at 325.

White v. Board of Review, 146 N.J. Super. 268 (App. Div. 1977), reached a similar result. White left her work release employment because she was required as a condition of her parole to reside with her mother, who lived thirty-eight miles away from her job. Id. at 269. White did not have a vehicle. Ibid. Any requested change to her parole would have required a longer period of incarceration. Ibid. We affirmed the Board's decision disqualifying her for unemployment benefits. Id. at 271. Since 1961, "we have consistently held that causes personal to the claimant and not attributable to the work come within the disqualification of the statute." Id. at 270. This was the case even though the claimant was "on parole and subjected to conditions of that parole." Ibid.

In Self, 91 N.J. at 457, the Supreme Court considered terminations based on personal circumstances not related to the employment as "voluntary" rather than "involuntary." Two employees were terminated from employment based on a lack of transportation and denied unemployment benefits. Id. at 455. Both were required as a condition of employment to commute twenty miles from Trenton to Skillman. Ibid. Public transportation was not available. Ibid. The two commuted together until the car broke down, then rode with another

employee until that employee quit.  Ibid.  They reported to their employer they could not come to work due to transportation issues and eventually were told they were being replaced.  Ibid.  The employer's "termination report" said they "quit" because of "no transportation."  Ibid.  The Supreme Court reversed the Appellate Division, which would have allowed unemployment compensation, and reinstated the Board's decision finding it was "compelled by the statute and the findings of the administrative agency to recognize the termination of their employment as voluntary."  Id. at 457-58.

The Court observed that although the UCL originally did not disqualify a claimant from benefits who left employment for good personal reasons, "[t]he effect of the 1961 amendment was to eliminate the eligibility of persons who leave work for good, but personal, causes."  Id. at 457.  Notably, the Court did not treat the loss of employment as involuntary even though they were terminated; it was voluntary without good cause attributable to the job because the lack of transportation was a personal reason.  Id. at 460.

In Yardville Supply Co. v. Board of Review, 114 N.J. 371, 372-73 (1989), the employee truck driver lost his job after his license was suspended for driving while intoxicated during his non-working hours.  Although the driver wanted to continue to work in a non-driving capacity, his employer did not have that kind

10

of work for him.  Id. at 373.  He applied for and was granted unemployment benefits.  Ibid.  The Appellate Division affirmed, but the Supreme Court reversed, finding the driver had left work voluntarily without good cause.  Id. at 375.  The Court considered the employee was "not the sort of 'involuntarily' unemployed worker that the Act is designed to protect."  Ibid.

The Department's regulations address general principles regarding the disqualification from unemployment benefits for voluntarily leaving employment.  See N.J.A.C. 12:17-9.1.  The "burden of proof is on the claimant to establish good cause attributable to such leaving work."  N.J.A.C. 12:17-9.1(c).  Subsection "e" of the regulation addresses when an individual's separation from employment is reviewed as voluntary.  N.J.A.C. 12:17-9.1(e).  Under subsection "(e)(10)", separation from employment due to incarceration "shall be reviewed as a voluntarily leaving work issue[.]"  N.J.A.C. 12:17-9.1(e)(10).  We accord some deference to the Department in its interpretation of the statute and implementing regulation.  Ardan, 231 N.J. at 604.  The Board's determination that Haley was disqualified for unemployment benefits was consistent with this regulation.  There was nothing arbitrary, capricious or unreasonable in the Board's decision.  See Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).

Haley urges that pretrial incarceration followed by the dismissal of charges should not be reviewed by the Board as "voluntary" even though the incarceration was personal to Haley and had nothing to do with his employment. Haley cites DeLorenzo v. Board of Review, 54 N.J. 361 (1969). In DeLorenzo, the employee became ill for reasons not related to her employment. Id. at 362. She was ordered to refund the unemployment benefits she received. Ibid. The Supreme Court reversed and remanded to the Board. Ibid. It agreed that under the UCL "the disqualification [from unemployment benefits] arises only upon a finding that the employee, in fact, decided to terminate the employment because the work duties are detrimental to an existing physical condition or state of health which did not have a work connected origin." Id. at 364. There is no indication this decision extended beyond health-related issues.

The UCL has been amended to provide that certain individuals are not disqualified from benefits who have quit or been terminated for personal reasons not connected to the work. This includes persons in "training approved under section 236(a)(1) of the 'Trade Act of 1974,' Pub.L.93-618 (19 U.S.C. § 2296 (a)(1))," N.J.S.A. 43:21-5(h)(1), or who have "left work or [were] discharged due to circumstances resulting from the individual being a victim of domestic violence as defined in section 3 of P.L.1991, c. 261 (C.2C:25-19)," N.J.S.A.

43:21-5(j), or following a transfer "if the individual left work to accompany his or her spouse who is an active member of the United States Armed Forces, as defined in N.J.S.A. 38A:1-1(g), to a new place of residence outside the State," under certain circumstances. N.J.S.A. 43:21-5(k). Under Haley's interpretation of the statute, there would have been no reason for the legislature to amend the UCL to make provisions for these exceptions because all of them presented grounds for leaving that had nothing to do with the employer, and certainly in the case of domestic violence victims, could not be said to be voluntary.

Haley argues that New Jersey is an "outlier" because other states allow for unemployment compensation benefits in situations involving incarceration without convictions. However, that statement does not consider New Jersey's 1961 amendment to the UCL that "disqualif[ies] claimants who left work for purely personal reasons." Brady, 152 N.J. at 213.

In Parker v. Department of Labor and Employment Security, 440 So. 2d 438, 439-40 (Fla. Dist. Ct. App. 1983), the court ruled that the claimant, who was incarcerated for a month on criminal charges that subsequently were dropped, was entitled to unemployment. We rejected Parker's analysis in Fennell based on the 1961 amendment of our UCL. See Fennell, 297 N.J. Super. at 324-25.

In Irving v. Employment Appeal Board, 883 N.W.2d 179, 210 (Iowa 2016), the Supreme Court of Iowa acknowledged its law was different from New Jersey's. It reviewed a rule that provided "an irrebuttable presumption that the employee is disqualified from receiving unemployment benefits on the ground that the employee voluntarily quit employment." Id. at 205. That court distinguished Fennell, finding that our interpretation of the phrase "attributable to the employer" was different than under Iowa law. Id. at 210. For the quit to be nonvoluntary under Fennell, the reasons had to be attributable to the employer "with very few and narrow exceptions." Ibid. (citing Fennell, 297 N.J. Super. at 323). That was not the case under Iowa law. Ibid.[5]

In State, Employment Security Division v. Murphy, 371 P.3d 991, 994 (Nev. 2016), the court considered whether incarceration was "misconduct" to deny unemployment compensation. This is not how the issue is treated under the UCL. Also, Murphy pleaded guilty to the charges. Id. at 995. The court acknowledged "when an employee is convicted of a crime, it is the employee's criminal behavior that prevents him or her from returning to work, and the

---

[5] Although cited by Haley, the case of Ford v. Labor & Industrial Relations Commission, 841 S.W.2d 255 (Mo. Ct. App. 1992), was remanded for further development of the record.

employee is disqualified from receiving unemployment benefits."  Ibid.  That was not the situation here.

The statutes in California and Pennsylvania cited by Haley are dissimilar from the UCL.  In California, "[i]f the employment of an individual is terminated due to his absence from work for a period in excess of [twenty-four] hours because of his incarceration and he is convicted of the offense for which he was incarcerated or of any lesser included offense, he shall be deemed to have left his work voluntarily without good cause."  Cal. Unemp. Ins. Code § 1256.1(a).  In Pennsylvania, "[a]n employee shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employee is incarcerated after a conviction."  43 Pa. Cons. Stat. § 802.6(a).  New Jersey's UCL does not include similar language.

By separating "voluntary" from whether it was "attributable to the employment," Haley's interpretation allows for an expansion of benefits to any non-work-related reason an employee is terminated from employment.  If the worker were to resign, under Haley's analysis, the same worker would be disqualified from benefits unless attributable to the employment.  This was not the approach followed in Fennell.  The legislature has not amended the statute to address this issue since our decision in Fennell.  "[W]e presume that the

Legislature is familiar with existing judicial statutory interpretations." Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227 (1994) (citing Brewer v. Porch, 53 N.J. 167, 174 (1969)). We conclude, therefore, that the Board's decision was not contrary to the UCL. Haley did not meet his burden of showing there were circumstances about his case that showed the decision to deny benefits was arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4973-17T2