SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**Clarence Haley v. Board of Review (A-71-19) (084123)**

**Argued January 5, 2021 -- Decided March 17, 2021**

**SOLOMON, J., writing for the Court.**

The Court considers whether pretrial detention premised on charges that are later dismissed is a separation from work that automatically disqualifies an applicant from unemployment benefits under the Unemployment Compensation Law (UCL).

Between May and December 2017, Garden State Laboratories (Garden State) employed Clarence Haley.  In December, authorities arrested Haley, charging him with a number of serious offenses.  Haley was detained pretrial.  One week after his arrest, Haley's mother telephoned Garden State and requested that Haley's position remain open while he contested the charges, but Garden State terminated Haley's employment.  Two months after his arrest, a grand jury declined to indict Haley.  The prosecutor dismissed all charges and permitted Haley's release from detention.

Haley filed an application for unemployment benefits.  The Department of Labor and Workforce Development (the Department) denied the application, finding that Haley left his job voluntarily for personal reasons.  The Appeal Tribunal, Board of Review, and Appellate Division each affirmed.  The Court granted certification.  242 N.J. 123 (2020).

**HELD:**  Pretrial detention is not an absolute bar to receiving unemployment compensation benefits for the time following dismissal of the charges and release from detention.  Based on the specific facts presented by this appeal, the UCL and N.J.A.C. 12:17-9.1(e)(10) required the Department to review the totality of the circumstances surrounding Haley's detention and release to determine whether he "left work voluntarily."  That review did not occur here.

1.  Under the UCL, an individual who "has left work voluntarily without good cause attributable to such work" is "disqualified for benefits" until certain conditions are met.  N.J.S.A. 43:21-5(a).  N.J.A.C. 12:17-9.1(e) provides guidance as to what may, upon review, be deemed "voluntarily" leaving work.  And, under N.J.A.C. 12:17-9.1(e)(10), separation from work due to incarceration is "_reviewed_ as a voluntarily leaving work issue" (emphasis added).  The Department has acknowledged that its review of the reasons for leaving work set forth in N.J.A.C. 17-9.1(e) is a fact-sensitive analysis and

1

has observed that it did not "intend that this rule automatically result in a finding of voluntarily leaving work without good cause attributable to the work when the leaving was due to the reasons listed." It has stated, regarding separation through incarceration, that "the relevant circumstances of the individual's incarceration will be considered in deciding the voluntary or involuntary nature of the separation." And it has said that determinations must be made "on a case-by-case-basis." (pp. 9-12)

2. The Court similarly acknowledged the need for a fact-sensitive inquiry in DeLorenzo v. Board of Review, 54 N.J. 361 (1969). There, the Court decided that an employee who became ill for reasons unrelated to work was entitled to unemployment benefits because, "when an employee becomes ill and does those things reasonably calculated to protect the employment[, then] . . . there is no voluntary leaving of work." Id. at 364. And in Utley v. Board of Review, 194 N.J. 534, 550 (2008), the Court reinforced the notion that leaving work for reasons listed in N.J.A.C. 12:17-9.1(e) is not a per se bar to unemployment benefits. Rather, in evaluating a separation from work for one of the reasons listed in that regulation, "all relevant factors" must be considered, id. at 548, including whether the applicant for benefits engaged in voluntary acts resulting in the absence from work, whether he or she actively tried to keep the job, and the length of absence from work. (pp. 12-14)

3. "Incarceration" -- like the other reasons listed under N.J.A.C. 12:17-9.1(e) -- is not, in and of itself, an absolute bar to unemployment benefits. As in Utley and DeLorenzo, Haley's case calls for the Department's fact-intensive review of the totality of the circumstances surrounding Haley's detention and release to determine whether he "left work voluntarily." The fact-sensitive analysis here would have to consider that authorities arrested Haley, the court ordered him to be detained pretrial, the grand jury declined to indict, and the charges against him were dismissed. And, unlike the claimant in Fennell v. Board of Review, 297 N.J. Super. 319 (App. Div. 1997), who had been confined for nine months before release, Haley had been detained for about two months when he was released from detention. In the interim, Haley, like the claimant in DeLorenzo, took steps to preserve his job. The Court's decision in this matter is guided by the notion that the UCL is remedial and the principle that N.J.A.C. 12:17-9.1(e) is not inflexible. Haley's arrest and detention were "not the end, but only one important part of the inquiry" under N.J.A.C. 12:17-9.1(e)(10). See Utley, 194 N.J. at 551. (pp. 14-16)

**REVERSED and REMANDED to the Department for further proceedings.**

**JUSTICE ALBIN, dissenting,** would hold that an employee terminated solely because of an arrest and pretrial detention -- followed by a dismissal of the criminal charges -- has not "left work voluntarily" and is therefore not disqualified from benefits, regardless of the length of detention. No further analysis should be required, in Justice Albin's view, and denying benefits to a person who loses his job because of a wrongful pretrial detention cannot be reconciled with the humane objectives of the UCL or the

2

Court's decision in <u>DeLorenzo</u>.  Noting that <u>Fennell</u>, which focused on the length of detention, cannot coexist with <u>DeLorenzo</u>, Justice Albin opines that <u>Fennell</u> should be overruled.  Justice Albin would reverse without remanding.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and PIERRE-LOUIS join in JUSTICE SOLOMON'S opinion. JUSTICE ALBIN filed a dissent.**

SUPREME COURT OF NEW JERSEY

A-71 September Term 2019

084123

Clarence Haley,

Appellant-Appellant,

v.

Board of Review, Department of Labor,

Respondent-Respondent,

and

Garden State Laboratories, Inc.,

Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
462 N.J. Super. 222 (App. Div. 2020).

| Argued | Decided |
| --- | --- |
| January 5, 2021 | March 17, 2021 |

Jennifer B. Condon argued the cause for appellant (Seton
Hall University School of Law, Center for Social Justice,
attorneys; Jennifer B. Condon, on the briefs).

Christopher J. Hamner, Deputy Attorney General, argued
the cause for respondent (Gurbir S. Grewal, Attorney
General, attorney; Sookie Bae-Park, Assistant Attorney
General, of counsel, and Andy Jong, Deputy Attorney
General, on the briefs).

Tess Borden argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Tess Borden, Alexander Shalom, and Jeanne LoCicero on the brief).

Alan H. Schorr argued the cause for amicus curiae National Employment Lawyers Association-New Jersey (Schorr & Associates, attorneys; Alan H. Schorr, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

Under the Unemployment Compensation Law, N.J.S.A. 43:21-1 to -71 (UCL or Act), an individual who "has left work voluntarily without good cause attributable to such work" is "disqualified for benefits" until certain conditions are met. N.J.S.A. 43:21-5(a). And, under the regulations promulgated pursuant to the UCL, separation from work due to incarceration is "reviewed as a voluntarily leaving work issue." See N.J.A.C. 12:17-9.1(e)(10). In this case, the Court considers whether pretrial detention premised on charges that are later dismissed is, automatically, a disqualifying separation from work within the meaning of the Act.

Authorities arrested Clarence Haley for serious offenses and ordered that he be detained pretrial. One week later, Haley's mother contacted his employer, Garden State Laboratories (Garden State), requesting on Haley's behalf that his job be preserved. Eight weeks after that, a grand jury declined

2

to indict Haley and the prosecutor dismissed all charges against him. In the interim, Garden State terminated Haley's employment.

Following his release from detention, Haley filed an application for unemployment benefits. The Department of Labor and Workforce Development (Department) denied Haley's application on the ground that Haley voluntarily left his job with Garden State without good cause attributable to work. The Appeal Tribunal, Board of Review, and Appellate Division affirmed the Department's decision.

We conclude that pretrial detention is not an absolute bar to receiving unemployment compensation benefits for the time following dismissal of the charges and release from detention because N.J.A.C. 12:17-9.1(e)(10) specifically provides that "[i]ncarceration" shall be "reviewed as a voluntarily leaving work issue" (emphasis added). Based on the specific facts presented by this appeal, the UCL and N.J.A.C. 12:17-9.1(e)(10) required the Department to review the totality of the circumstances surrounding Haley's detention and release to determine whether he "left work voluntarily." Because that review did not occur, we reverse the judgment of the Appellate Division and remand to the Department for further proceedings consistent with this opinion.

I.

The appellate record reveals the following undisputed facts.

Between May and December 2017, Garden State employed Haley as a maintenance worker. In December, authorities arrested Haley on a complaint-warrant charging him with kidnapping, robbery, burglary, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. A Superior Court Judge conducted a detention hearing, found probable cause, and ordered that Haley be detained pretrial. One week after Haley's arrest, Haley's mother telephoned Garden State and requested that Haley's position remain open while he contested the charges. Despite the request of Haley's mother that his job be held, Garden State hired a replacement and terminated Haley's employment because of his pretrial detention.

In February 2018, two months after Haley's arrest, a grand jury found the evidence presented to indict Haley insufficient to establish probable cause that he committed the offenses charged. The prosecutor dismissed all charges and permitted Haley's release from detention. Haley filed an application for unemployment benefits about a week later.

The Department denied the application, finding that Haley left his job voluntarily for personal reasons. Haley appealed. Following a hearing before an appeals examiner, the Appeal Tribunal affirmed the Department's decision,

4

finding no evidence that Haley was "falsely imprisoned" or "involved in a case of mistaken identity." The Appeal Tribunal concluded therefore that Haley left his employment voluntarily for personal reasons, without good cause attributable to work. Haley's subsequent appeals to the Board of Review and Appellate Division were likewise unsuccessful.

The Appellate Division, citing Fennell v. Board of Review, 297 N.J. Super. 319 (App. Div. 1997), affirmed, concluding that the UCL was amended in 1961 to disqualify applicants who leave work for purely personal reasons, and that incarceration is a purely personal reason. The court acknowledged that, under the UCL amendments, individuals "who have quit or been terminated for personal reasons not connected to work" are not automatically disqualified from receiving benefits. But the Appellate Division reasoned that the Legislature would not have created explicit exemptions from disqualification -- for those who leave work after being subjected to domestic violence, N.J.S.A. 43:21-5(j), and those who leave work to travel with a spouse who is an active member of the United States Armed Forces, id. at (k) -- if benefits were payable for "any non-work-related reason an employee is terminated from employment."

We granted Haley's petition for certification. 242 N.J. 123 (2020). We maintained the American Civil Liberties Union of New Jersey's (ACLU) status

as amicus curiae, and we granted the National Employment Lawyers Association of New Jersey's (NELA) motion to appear as amicus curiae.

## II.

Haley argues the Appellate Division erred by concluding that his pretrial incarceration was a voluntary departure from employment. First, Haley argues the Appellate Division conflated the question of voluntariness with the question of whether an employee who quit did so for reasons "attributable to work." Next, Haley argues it would be plainly unreasonable if incarceration were construed to be, automatically, a voluntary departure not attributable to work -- and thus a per se bar to benefits -- in N.J.A.C. 12:17-9.1(e). In so doing, Haley argues the Appellate Division's opinion in Fennell should be overruled.

The ACLU agrees with Haley that, under the UCL, the threshold inquiry focuses on the reason the person becomes unemployed. Thus, the ACLU maintains that the initial question is whether the departure was voluntary, and only after that question is answered should a court determine if the voluntary departure was related to work. The ACLU adds that N.J.A.C. 12:17-9.1(e) should not be applied mechanically, but requires a case-specific, fact-intensive analysis, and that the failure to conduct such an analysis here is contrary to the UCL's remedial and beneficial purposes.

6

NELA agrees that N.J.A.C. 12:17-9.1(e) does not suggest that imprisonment is always voluntary, but merely lists it as a reason that may be "reviewed" as voluntary. NELA further contends that, unlike the applicants in cases cited by the Appellate Division, Haley did not engage in any voluntary act resulting in his absence from work and he actively tried to keep his job.

The Board emphasizes that the Department's interpretation of N.J.A.C. 12:17-9.1(e)(10) is entitled to a presumption of validity and is consistent with case law.[1] Additionally, the Board argues the Legislature amended the UCL to allow some categories of claimants who left work for personal reasons to qualify for benefits, but chose not to amend the statute in response to Fennell, where the director denied benefits to a claimant who was arrested, detained, and terminated from employment before the charges against him were dropped.

Finally, the Board distinguishes this case from others where benefits were awarded, noting that the employer in this case had no way of knowing how long Haley's incarceration would last. The Board further argues that the Appellate Division decision does not conflict with DeLorenzo v. Board of Review, 100 N.J. Super. 473, 476 (App. Div. 1968), where the court explained that the word "voluntarily" within the statutory phrase "voluntarily without

[1] Respondent Garden State did not file a brief.

good cause attributable to such work," is not "a separate and additionally requisite criterion of disqualification, but rather a legislative characterization of the action of a worker who leaves work without just cause attributable to the work." The Board also claims that even though in DeLorenzo we held that, notwithstanding the provisions of N.J.A.C. 12:17-9.1(e), leave from work because of illness not attributable to work is not itself voluntary, 54 N.J. 361, 364 (1969), there is no indication that DeLorenzo extends beyond health-related issues, and that decision thus does not affect Haley's case.

III.

A.

Because this appeal requires that we examine the decision of the Department, we begin with the applicable standard of review in such cases: we will "defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable." Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). "To apply the 'plainly unreasonable' standard, [this Court] first consider[s] the words of the statute [or regulation], affording to those words 'their ordinary and commonsense meaning.'" Id. at 604-05 (quoting In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J.

533, 542 (2016)). The Court is "not bound by an unreasonable or mistaken interpretation of [a statutory] scheme, particularly one that is contrary to legislative objectives." McClain v. Bd. of Review, 237 N.J. 445, 456 (2019).

In this appeal, we review the Department's interpretation of N.J.S.A. 43:21-5(a) and N.J.A.C. 12:17-9.1(e), regarding voluntary departure from employment. We conduct this review mindful of the UCL's remedial purpose, "to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own.'" Utley v. Bd. of Review, 194 N.J. 534, 543 (2008) (quoting Battaglia v. Bd. of Review, 14 N.J. Super. 24, 27 (App. Div. 1951)). As remedial legislation, the UCL "must be construed liberally in favor of allowance of benefits." See McClain, 237 N.J. at 461-62 (quoting Utley, 194 N.J. at 543); see also Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989) ("The public policy behind the Act is to afford protection against the hazards of economic insecurity due to involuntary unemployment.").

B.

We begin by examining the language of N.J.S.A. 43:21-5(a) and N.J.A.C. 12:17-9.1(e).

First, N.J.S.A. 43:21-5(a) states "[a]n individual shall be disqualified for [unemployment benefits]" if "the individual has left work voluntarily without

9

good cause attributable to such work." A Department regulation, in turn, provides guidance as to what may, upon review, be deemed "voluntarily" leaving work; N.J.A.C. 12:17-9.1(e)(10) provides that "[a]n individual's separation from employment shall be reviewed as a voluntarily leaving work issue where the separation was for the following reasons including, but not limited to . . . [i]ncarceration."

The Department acknowledges that its review of the reasons for leaving work set forth in N.J.A.C. 12:17-9.1(e) is a fact-sensitive analysis. Indeed, the Department observed in December 1997 that

> [it] did not intend that this rule automatically result in a finding of voluntarily leaving work without good cause attributable to the work when the leaving was due to the reasons listed. As any of these reasons are subject to fact-finding, the Department has modified the rule in the reproposed new rule at N.J.A.C. 12:17-9.1(e) by providing that they will be reviewed as a voluntarily leaving issue.
>
> [29 N.J.R. 5158(a).]

Six months later, the Department considered incarceration under N.J.A.C. 12:17-9.1(e), and clarified that both the length of detention and the circumstances resulting in detention are relevant in determining whether the claimant's separation from work is voluntary under the UCL:

> The rule states that the individual's separation may be "reviewed" as a voluntarily leaving work issue. During such review, <u>the relevant circumstances of the</u>

10

individual's incarceration will be considered in deciding the voluntary or involuntary nature of the separation and if a disqualification is applicable. It should be noted that under subsection (a) of N.J.S.A. 43:21-5, the word "voluntarily" is not a separate and additional requirement of disqualification but rather is a legislative characterization of a worker who leaves work without good cause attributable to such work. "Blameless" or "involuntary" separations caused by personal reasons may be outside the claimant's control, however, when not attributable to the work, a disqualification under N.J.S.A. 43:21-5(a) would be appropriate. It is doubtful that a short incarceration for two days would be considered a voluntary leaving of work, but a claimant's separation from work due to an extended stay due to the claimant's criminal behavior can hardly be considered a discharge initiated by the employer.

[30 N.J.R. 2027(a) (June 1, 1998) (emphases added).]

Eleven years later, the Department again highlighted the need for a fact-sensitive analysis to determine whether the claimant's separation from work is voluntary, stating that N.J.A.C. 12:17-9.1(e)'s list of circumstances reviewable as "voluntary leaving work issue[s]," including incarceration,

does not mean that where a separation occurred under one of the circumstances listed there must be a finding that the individual is disqualified from receipt of benefits for voluntarily leaving work without good cause attributable to the work, but rather, that the matter should be determined on a case-by-case basis using the voluntary quit analysis; that is, whether the individual left the work voluntarily and then, if he or she did leave the work voluntarily, whether he or she left voluntarily with or without good cause attributable to the work.

11

[41 N.J.R. 263(a) (Jan. 5, 2009) (emphases added).]

C.

Our jurisprudence is consistent with the direction given by the Department. Indeed, decades before the Department's guidance cited above, we acknowledged the need for a fact-sensitive inquiry in DeLorenzo v. Board of Review (DeLorenzo II), 54 N.J. 361 (1969). There, we decided that an employee who became ill for reasons unrelated to work was nonetheless entitled to unemployment benefits. DeLorenzo II, 54 N.J. at 364. Importantly, before our decision in DeLorenzo II, we had remanded the matter to the Department because "neither the Appeal Tribunal nor the Board of Review made findings of fact," or "explicit findings with respect to whether the employee did seek to return to her job" upon recovery, which were required. DeLorenzo v. Bd. of Review, 53 N.J. 143, 146 (1969). On remand, the Department found the claimant "did not intend to give up her job; that upon recovery from her illness she sought to return to her employment but no work was available; and that her subsequent efforts to find work were unrewarding." DeLorenzo II, 54 N.J. at 363. Consistent with a broad reading of the UCL as remedial legislation, we adopted the Board of Review's holding on remand that "when an employee becomes ill and does those things reasonably

12

calculated to protect the employment[, then] notwithstanding that she is not reinstated, there is no voluntary leaving of work." Id. at 364.

Following the promulgation of N.J.A.C. 12:17-9.1(e), we reinforced in Utley the notion that leaving work for reasons listed in N.J.A.C. 12:17-9.1(e) is not a per se bar to unemployment benefits. 194 N.J. at 550. In that case, Utley's vision problems prevented him from driving. Id. at 537. After his company changed his work hours to a time when public transportation did not run, Utley carpooled with coworkers until the arrangement was no longer practicable for the other employees. Id. at 538-39. Without transportation to and from work, Utley resigned out of fear of being fired. Id. at 539. In our analysis, we recognized that notwithstanding N.J.A.C. 12:17-9.1(e)'s provision that "lack of transportation" "shall be reviewed as a voluntarily leaving work issue," resolution of whether Utley left his job for good cause attributable to work "called for a fact-sensitive analysis." Id. at 550. Although our decision in Utley focused on whether the claimant quit his position for "good cause attributable to [his] work," id. at 543, while DeLorenzo addressed whether the claimant voluntarily left her position, 54 N.J. at 364, the findings were the same -- determinations under N.J.S.A. 43:21-5(a) require a fact-sensitive review.

Thus, as early as 1969 with <u>DeLorenzo II</u>, and four decades later in

<u>Utley</u>, this Court applied N.J.S.A. 43:21-5(a) according to its terms, consistent

with the specific provisions of the regulation and the Department's later

comments: "where a separation occurred under one of the circumstances listed

[in N.J.A.C. 12:17-9.1(e)]," it is "reviewed as a voluntary leaving work issue"

and "should be determined on a case-by-case basis." 41 N.J.R. 263(a). In

making that determination, "all relevant factors" must be considered, <u>Utley</u>,

194 N.J. at 548, including whether the applicant for benefits engaged in

voluntary acts resulting in the absence from work, whether he or she actively

tried to keep the job, and the length of absence from work.[2]

With those considerations in mind, we turn to the limited record before

this Court and address whether Haley's pretrial detention, premised on

dismissed charges, is a "voluntarily leaving work issue" under the UCL.

IV.

Although listed under N.J.A.C. 12:17-9.1(e)(10), "incarceration" -- like

illness and lack of transportation -- is not, in and of itself, an absolute bar to

unemployment benefits. As in <u>Utley</u> and <u>DeLorenzo</u>, Haley's case calls for the

---

[2] The fact-intensive inquiry needed to assess the voluntariness of work departures under subsection (e) of the regulation is distinguishable from the statutorily compelled exemptions from the voluntariness inquiry established by N.J.S.A. 43:21-5(j) and (k); we are therefore unpersuaded by the Appellate Division's reliance on those sections.

14

Department's fact-intensive review of the totality of the circumstances surrounding Haley's detention and release to determine whether he "left work voluntarily." See Utley, 194 N.J. at 548; DeLorenzo, 53 N.J. at 145. That review did not occur here.

The fact-sensitive analysis here would have to go beyond whether Haley was "falsely imprisoned" or "involved in a case of mistaken identity" to consider that authorities arrested Haley, the court ordered him to be detained pretrial, the grand jury declined to indict, and the charges against him were dismissed. And, unlike the claimant in Fennell, who had been confined for nine months before release, Haley had been detained for about two months when he was released from detention.[3] In the interim, Haley, like the claimant in DeLorenzo, took steps to preserve his job; Haley's mother contacted Garden State to ask that he retain his job while fighting the charges. See DeLorenzo II, 54 N.J. at 364 (recognizing employee action "reasonably calculated to protect the employment" militates against a finding of voluntarily leaving work). Our decision today is guided by the notion that the UCL is remedial and the principle that N.J.A.C. 12:17-9.1(e) is not inflexible. We find that

---

[3] While we agree that length of detention is a relevant factor, it is not determinative. The Department's fact-sensitive analysis must consider the totality of the circumstances.

15

Haley's arrest and detention were "not the end, but only one important part of the inquiry" under N.J.A.C. 12:17-9.1(e)(10).  See Utley, 194 N.J. at 551.

V.

For the reasons set forth above, the judgment of the Appellate Division is reversed, and the matter is remanded to the Department for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and PIERRE-LOUIS join in JUSTICE SOLOMON'S opinion.  JUSTICE ALBIN filed a dissent.

16

Clarence Haley,

Appellant-Appellant,

v.

Board of Review, Department of Labor,

Respondent-Respondent,

and

Garden State Laboratories, Inc.,

Respondent.

JUSTICE ALBIN, dissenting.

In passing the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-1 to -71, did the Legislature intend that one arm of government can cause the loss of a person's job by detaining him on charges later dismissed by a grand jury, and that another arm of government can find that the exonerated worker "voluntarily" left his employment without good cause, thus disabling him from receiving unemployment benefits? The answer to that question clearly should be no. In my view, the answer to that question does not require, as the majority holds, a fact-sensitive analysis and should not depend on the length of the vindicated worker's pretrial detention.

1

The remedial purpose of the UCL is "to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own." Utley v. Bd. of Review, 194 N.J. 534, 543 (2008) (emphasis added) (quoting Battaglia v. Bd. of Review, 14 N.J. Super. 24, 27 (App. Div. 1951)). Whether a worker loses his job -- through no fault of his own -- because his pretrial detention is two months, nine months, or twenty months should not change the equation.

I believe that this Court's decision in DeLorenzo v. Board of Review, 54 N.J. 361 (1969), should light our way. In that case, as noted by the majority, "we decided that an employee who became ill for reasons unrelated to work was nonetheless entitled to unemployment benefits." Ante at ___ (slip op. at 12) (citing DeLorenzo, 54 N.J. at 364). In DeLorenzo, we held that "when an employee becomes ill and does those things reasonably calculated to protect the employment[, then] notwithstanding that she is not reinstated, there is no voluntary leaving of work." 54 N.J. at 364. We did not suggest in DeLorenzo that the length of the worker's illness would enter into the calculus of whether she left work voluntarily or was entitled to unemployment benefits. A pretrial detainee does not leave his employment voluntarily, and when he makes efforts to preserve his job and is cleared of the criminal charges, he should be treated no differently than the ill employee in DeLorenzo.

2

I see no need for a remand in this matter. I would make clear that all exonerated employees who lose their jobs because of their pretrial detention are entitled to unemployment benefits under the UCL. That holding would advance the socially remedial purposes of the UCL rather than leave the employees doubly victimized -- first by a wrongful detention that causes their unemployment and then by a government indifferent to their financial distress.

I therefore respectfully dissent.

I.

Clarence Haley was gainfully employed as a maintenance worker at Garden State Laboratories, Inc. He was terminated from that position solely because he was arrested and jailed for two months on charges later dismissed by the State. Despite his efforts to keep his job and his ultimate vindication by a grand jury, Haley was unemployed at the end of his ordeal. Vindicated but jobless, Haley applied for unemployment benefits. The Department of Labor and Workforce Development (Department), however, denied Haley's application, concluding that his incarceration on unfounded charges constituted "voluntarily" leaving his job -- a decision upheld by the Department's Appeal Tribunal and Board of Review, and affirmed by the Appellate Division.

3

II.

A.

In enacting the UCL, the Legislature recognized that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state," and that the burden of unemployment "often falls with crushing force upon the unemployed worker and his family." N.J.S.A. 43:21-2. To alleviate the suffering caused by unemployment, the UCL is intended "to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own." Utley, 194 N.J. at 543 (quoting Battaglia, 14 N.J. Super. at 27). This Court has recognized that "the [UCL] is to be construed liberally in favor of allowance of benefits" to advance "its remedial and beneficial purposes." Ibid. (quoting Yardville Supply Co. v. Bd. of Review, 114 N.J. 371, 374 (1989)).

Under the UCL, a person is disqualified from unemployment benefits if he "has left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a) (emphasis added). To be sure, the statutory prose is far from a model of clarity. However, liberally construing N.J.S.A. 43:21-5 as we must, Utley, 194 N.J. at 543, a reasonable and sound interpretation of the statute is that it creates a voluntariness threshold that is independent of any inquiry about whether the employee's departure is work-related. The evident

4

goal of the UCL is to relieve the economic distress caused by "[i]nvoluntary unemployment," N.J.S.A. 43:21-2, not to cast adrift those displaced from their jobs through no fault of their own.

A worker who leaves his employment voluntarily without good cause is clearly disqualified from receiving unemployment benefits under N.J.S.A. 43:21-5(a). An employee, however, stricken by circumstances that are beyond his control and for which he bears no blame -- circumstances such as illness or wrongful pretrial detainment that make it impossible for him to maintain his work schedule -- cannot be said to have left his employment voluntarily under the UCL. That is the principle on which DeLorenzo stands.

In DeLorenzo, we held that N.J.S.A. 43:21-5(a) did not disqualify a claimant from unemployment benefits who "became ill from causes unrelated to her employment." 54 N.J. at 362 (emphasis added). Although our Court did not clearly state its rationale, it adopted the Board of Review's position that "when an employee becomes ill and does those things reasonably calculated to protect the employment . . . there is no voluntary leaving of work" -- notwithstanding that the "illness [is ]not attributable to the work." Id. at 364 (emphasis added). Thus, under N.J.S.A. 43:21-5(a), a person who involuntarily leaves his job for personal, non-work-related reasons, such as sickness, is not disqualified from benefits. See id.

5

If under N.J.S.A. 43:21-5(a), a person who due to illness unrelated to her employment has not left work "voluntarily" and is qualified for unemployment benefits, how can it be that a person who loses his job due to a wrongful pretrial incarceration is any less qualified for unemployment benefits, regardless of the length of his detention?  If DeLorenzo rests on any principled ground, there can be no meaningful distinction between those two scenarios.  The logic of DeLorenzo instructs that the UCL does not ignore the economic distress of faithful employees who lose their jobs because of wrongful pretrial detentions -- or ignore their blameless families who are also denied the financial safety net intended by that law.

The fundamental rationale of DeLorenzo, in construing the meaning of N.J.S.A. 43:21-5(a), is that an involuntary work departure is not disqualifying.

B.

Haley seeks benefits only for the period after his release from jail, not for the time he spent wrongly behind bars.  In justifying the denial of unemployment benefits, the Department told Haley, "you left your job voluntarily . . . when you were incarcerated."  Only in the language of administrative doublespeak can a wrongful incarceration equate to an employee voluntarily leaving his job.  The Department's interpretation of N.J.S.A. 43:21-5(a) allows the receipt of benefits to workers who voluntarily

6

quit their jobs for justifiable work-related reasons but disallows those same benefits to workers who are <u>involuntarily</u> cast from their jobs because they are wrongly incarcerated. That illogical scheme is surely not what the Legislature intended in enacting the UCL -- and is not consistent with our holding in <u>DeLorenzo</u>.

I do not agree with the majority's fact-specific analysis that weighs a number of undefined factors and certain defined factors, such as "whether the applicant for benefits engaged in voluntary acts resulting in the absence from work, whether he or she actively tried to keep the job, and the length of absence from work." <u>Ante</u> at ___ (slip op. at 14). While clearly an employee who bears fault for his absence from work may be said to have acted voluntarily and should not be entitled to unemployment benefits, "the length of absence from work," when due to illness or wrongful incarceration, should not be in any way relevant to an analysis under the UCL. Logic and equity suggest that the longer the period of an employee's wrongful detention, the less likely an employer will maintain the position for him, and therefore the greater the justification for unemployment benefits. I do not see the sense in a scheme that says that the greater the injustice to the wronged employee, the less relief available to him.

The majority embraces Fennell v. Board of Review, in which the Appellate Division denied unemployment benefits to an employee who "had been confined to jail for nine months, unable to raise bail, and lost his job," even though the criminal charges were eventually dismissed. 297 N.J. Super. 319, 320 (App. Div. 1997). The majority finds "that length of detention is a relevant factor" in a totality-of-the-circumstances analysis and apparently approves of the Fennell rationale that a nine-month wrongful pretrial detention would be a sufficient basis for the denial of unemployment benefits. Ante at ___ & n.3 (slip op. at 15 & n.3). In my view, whether an employee loses his job because of a two- or nine-month wrongful detention or a two- or nine-month illness, he has not left his job voluntarily and is blameless for the cause of his unemployment, and he and his family are equally in need of the financial support provided by the UCL. Fennell cannot coexist with DeLorenzo, and therefore Fennell should be overruled.

The majority recognizes that Haley was detained for two months on charges dismissed by the State and that he unsuccessfully sought to keep his job. Nevertheless, the majority remands to the Department for further proceedings, noting that "Haley's arrest and detention [are] 'not the end, but only one important part of the inquiry,'" citing N.J.A.C. 12:17-9.1(e)(10), and quoting Utley, 194 N.J. at 551. Ante at ___ (slip op. at 16). But what more

8

can possibly be relevant in the analysis?  And how much more time must Haley expend in pursuit of unemployment benefits to which he is already entitled?

Additionally, we cannot escape the reality that significant racial disparities persist in arrests in our state.[1]  As amicus curiae ACLU has pointed out, denying unemployment benefits to those wrongfully detained will likely disproportionately impact people of color and further exacerbate racial inequities in employment and wealth.  That certainly is not an outcome consistent with the beneficent purposes of the UCL.

### III.

For the reasons expressed, I would hold that an employee terminated solely because of an arrest and pretrial detention -- followed by a dismissal of the criminal charges -- has not "left work voluntarily" and is therefore not disqualified from benefits under N.J.S.A. 43:21-5(a).  No further analysis

---

[1]  See, e.g., U.S. Dep't of Just., C.R. Div., Investigation of the Newark Police Department 20-21 (2014), https://www.justice.gov/sites/default/files/crt/legacy/2014/07/22/newark_findings_7-22-14.pdf (reporting that between January 2009 and June 2012 "black individuals were 2.6 times more likely to be arrested than white individuals in Newark"); N.J. State Police, Uniform Crime Report, State of New Jersey 2015 19, 50 (2015), https://www.njsp.org/ucr/2015/pdf/2015b_uniform_crime_report.pdf (reporting 116,727 of the 302,856 state-level arrests in 2015, or approximately 38.5%, were of Black people).

should be required. Denying unemployment benefits to a person who loses his job because of a wrongful detention cannot be reconciled with the humane objectives of the UCL or our decision in DeLorenzo. Because this case is ultimately about the meaning of the UCL, the Legislature -- by its silence or actions -- will have the final word on whether today's decision is consistent with the law it enacted.

I would reverse the judgment of the Appellate Division and not, as the majority directs, remand for further proceedings. Haley has made his case for his entitlement to unemployment benefits.

I therefore respectfully dissent.